295 So.2d 141 (1974)
ST. JUDE HARBORS, INC., a Florida Corporation, et al., Appellants,
v.
James H. KEEGAN, Jr. and Nina J. Hines, Appellees.
No. 72-317.
District Court of Appeal of Florida, Second District.
January 30, 1974.
Rehearing Denied June 17, 1974.
Allen, Knudsen, Swartz, DeBoest, Rhoads & Edwards, Fort Myers, for appellants.
Hugh E. Starnes, Henderson, Franklin, Starnes & Holt, Fort Myers, for appellees.
DEWELL, JOHN H., Associate Judge.
This is an appeal from a final judgment foreclosing two purchase money mortgages upon lands abutting Matlacha Pass in Lee County. The Pass is owned through sovereignty by the State of Florida. The 1961 sales agreement originating the transaction provided that the total sale price would be at the rate of $475.00 per acre. The sale was closed upon an engineer's office estimate of acreage. A field survey was to be performed after closing and any adjustment necessary in the total purchase price would be reflected in the last installments under the mortgages.
In computing the acreage in both the estimate and the field survey, the vegetation or "mangrove" line was used as the property boundary rather than the mean high tide line. The sale was closed upon the basis of the total area to the mangrove line of 438.89 acres (including for simplification purposes additional lands purchased a short time later upon the same terms and method of computation under an option included in the original sales contract). In 1967 the Appellant purchaser was notified by the State of its ownership between the mean high tide line and the mangrove line. Appellant secured a new survey revealing that 178.69 acres or approximately 40% of the original 438.89 figure was owned by the State of Florida. The mortgage foreclosure litigation here for review followed.
Evidence of the pre-sale negotiations revealed that the purchasers intended to develop the land for resale and were especially concerned with acquisition of riparian rights. They understood a bulkhead *142 line would have to be established and a dredge and fill permit secured in order to develop to the vegetation line.
There was testimony by the real estate broker that at the time of this sale, it was customary for developers in this area to fill and otherwise develop land to the vegetation line and for sellers in valuing their property to take into consideration development to the vegetation line. The original engineer confirmed the practice of filling to the mangrove line although implying it may have been done without the benefit of compliance with the legal niceties of the bulkhead law. He further testified that requests for mean high tide line surveys were not common in 1961.
The Chancellor found that the parties intended to compute the acreage for sale purposes by using the vegetation or mangrove line as the boundary and that the surveyor supplied final acreage figures which were accepted as correct by all parties. He further found that the purchasers were fully aware that lands were included which could not be developed without bulkhead line approval and dredge and fill permits.
With these findings we would have no quarrel except that they ignore the more basic fact that the land between the mean high tide line and the mangrove line was owned by the State and not by the Sellers. The facts existing in Trustees of Internal Improvement Fund v. Wetstone, Fla. 1969, 222 So.2d 10 are not present here. Therefore, our rule applies that grants of lands bounded by navigable waters carry title to the ordinary high water mark, making it the boundary. Lopez v. Smith, Fla.App. 2nd, 1962, 145 So.2d 509.
The record is barren of any evidence even implying that the purchasers intended to buy only to the mean high tide line. In fact, when advised of the possibility of the State owning "a good part of the acreage" the purchaser is reported to have replied to the effect that "he bought it one time, he was not going to buy it again."
We can only speculate on whether the situation here resulted from slackness of the State policies at the time in claiming its rights or from an honest mistaken belief by the sellers and the real estate brokers that the mangrove line was actually the boundary line or from total indifference to the true situation.
In any event, the conclusion is inescapable that the Sellers attempted to sell a substantial tract of land which they did not own and the lower Court judgment would require that it be paid for in full. This, we cannot affirm.
The parties intended to compute the acreage for sale purposes by measuring to the vegetation line as found by the Chancellor. But this was so only because the buyers understood they were buying to that line. The mistake was not in the computation of the acreage but in the location of the boundary line. There is no dispute as to the acreage within each of the boundary lines.
It is apparent that cancellation of the whole transaction returning the parties to their original positions is impossible. The passage of time, the granting of releases and of extensions and the probable existence of other equities make a just settlement of the transaction very difficult. In considering the relative equities it cannot be ignored that the buyers failed to ascertain the true boundary before closing or to take action when first told of the possible mistake. We hold that the purchase price should be ratably reduced at the rate of $475.00 per acre and that the final judgment foreclosure should be set aside.
The Chancellor should then enter such further judgment concerning refund as shall seem just, having due regard to all of the facts and equities of the case.
The judgment appealed is reversed and this cause is remanded for further proceedings consistent with this opinion.
McNULTY, Acting C.J., and GRIMES, J., concur.