651 So.2d 735 (1995)
LLOYD ENTERPRISES, INC., Appellant,
v.
DEPARTMENT OF REVENUE, Appellee.
No. 93-1304.
District Court of Appeal of Florida, Fifth District.
March 3, 1995.
Edgar M. Dunn, Jr. of Dunn, Abraham, Swain & Dees, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Lealand L. McCharen, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Lloyd Enterprises, Inc., ("Lloyd") appeals from a final order issued by the Department of Revenue, ("Department") which determined Lloyd owes the state $106,129.47 for sales taxes, penalties and interest. Approximately $6,004.38 of the assessed tax liability is based on the Department's view that beach concessionaire license and transfer fees paid by Lloyd to Volusia County ("County") during the five-year audit period (November 1, 1985 to December 31, 1990) were taxable pursuant to section 212.031, Florida Statutes (1989), as "leases or rentals of, or licenses of real property." The concession license and transfer fees were imposed pursuant to concession agreements with the *736 County and pursuant to the County's Unified Beach Code, which creates the fees. The concession fee was based upon a concessionaire's gross sales and the transfer fee was imposed when a person sold or transferred the right to operate under a license issued by the county. The balance of the tax assessment ($57,471.43) was levied against Lloyd for the alleged failure to pay sales taxes on goods and services sold to customers pursuant to section 212.10, Florida Statutes (1989), for the audit period November 1, 1985 to May 9, 1989, before Lloyd owned and operated the concession stands.
Lloyd argues section 212.031 was erroneously applied to the beach concession fees charged by Volusia County. It also argues section 212.10 is unconstitutional as applied to Lloyd in this case, and that the "projection" method used by the Department's auditors to determine the amount of taxes due was unauthorized, unreasonable and arbitrary. We partially agree and reverse.
Lloyd is a family-owned and operated business, which became incorporated in 1989. In 1985, Harold Lloyd and his wife, Sheila, owned and operated concession spot 119, renting out motorcycles, as a sole proprietorship on New Smyrna Beach. During the "off season" they also helped Harold Lloyd's parents operate their concession at another location on New Smyrna Beach spot 127. Later, the Lloyds purchased this full-service concession from his parents. The other spots (130 and 128) were purchased by the Lloyds from prior owners whose businesses were failing. Number 130 had been out of business one year when the Lloyds bought it from the prior owner's creditors. The Lloyds also acquired spots 129 and 131 in 1989. Both were full-service concessions.

I. Beach Concession Transfer and License Fees

Section 212.031 provides:
(1)(a) It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license for the use of any real property unless such property is ... [specific list of situations and circumstances not applicable to this case].
The Department argued that the transfer and annual fees charged by the County to beach concessionaires pursuant to its Unified Beach Code and Ordinance[1] constitute rent payments for the various beach locations. Lloyd was assessed sales taxes for all beach concession fees it had paid to the County during the audit period.
The record establishes that the fixed location concessionaires (like Lloyd) had the right to park their vehicles within one hundred feet north or south of an assigned spot during the hours they were permitted to operate on the beach. Other concessionaires were allowed to roam the beach. If any other concessionaire attempted to park or sell goods within an assigned spot, the beach rangers would enforce Lloyd's exclusive right to sell within its assigned two-hundred-foot spot on the beach.
We conclude that the hearing officer erred in deciding that it was proper to impose a sales tax on the fees Volusia County charged Lloyd for the privilege of selling and renting goods and services to the public on public beaches, and that these privileges constituted taxable events under Rule 12A-10.070, Florida Administrative Code,[2] and section 212.031, Florida Statutes. The hearing officer arrived at this ruling simply by deferring to the Department's interpretation of the rule and by noting there was no contrary case law. The hearing officer correctly pointed out that deference should be given to an agency's interpretation of its rules and the statutes it is charged to administer. However, the agency's interpretation is subject to review and is not conclusive.
None of the numerous subparts of Rule 12A-1.070 applies specifically in the instant case. Nor does the statute under which the Department promulgated its rules. The *737 statute reads rather simply that "[i]t is declared a legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license for the use of any real property... ." § 212.031, Fla. Stat. We cannot conclude that the County has been engaging in any such business.
In November 1986, the electors of the County approved the Beach Trust Amendment to the Home Rule Charter. It recognized the public's superior right to use the beach and required the County to "define, protect, and enforce" that right.[3] The County was further given the "exclusive authority to regulate the beaches and public beach access and use." Finally, the County was required to adopt a Unified Beach Code to regulate public health, safety, and welfare, and "vendors, concessionaires, and special events."
In fulfillment of its obligation, the County adopted a Unified Beach Code. One of its sections deals exclusively with the regulation of concessionaires on the public's beach. This section, which applies to concessionaires having fixed locations and to others that operate from moving vehicles within a zone of operation on the beach, was amended in 1988 by Ordinance No. 88-32. The ordinance uses various terms to describe its purposes, for example: the County is "trustee of the public interest" in exercising its power to regulate private vendors making use of the public beach; vendors are to pay a "franchise fee"; and a "concession license" is required. The term most frequently used to define a business privileged to operate on the beach is "concession." The ordinance is quite detailed as to days and hours a concession is required to operate, the condition of the equipment, transfers, relocation requirements, terminations, and payment of fees (the fee is the same for fixed or roving concessions). While the County and Lloyd executed a contract, there is nothing in the contract, beyond a description of where Lloyd's concession would be located, which is not contained in the ordinance. Therefore, it is the ordinance that must be construed to determine whether the privilege granted to Lloyd constituted a lease or license of real property.
Our view of the ordinance is that it serves multiple purposes, none of which creates a lease or license for the use of real property. As the ordinance relates to concessions, it is concerned with the image that activities on the beach project to visitors (an extreme example is that the ordinance prohibits rental of umbrellas that contain unmended tears), and it is concerned with enhancing the public's enjoyment of the beach through the provision of goods and services. It is concerned with providing those goods and services so long as "individual peace and quiet is not unreasonably disturbed" and with strictly regulating the vendors to insure that adequate and quality services are provided to the public without disruptive competition. It is also concerned with raising revenue for the County. The great importance of revenue from the concessionaires was conveyed by an assistant county attorney who placed the cost of beach cleanup at $1.5 million annually. She emphasized that most of the cleanup was attributable to products sold by the vendors and that the fees paid by the vendors helped defray that huge cost.
We hold that, in exercising the duties imposed on it by the Unified Beach Code, the County did not enter into the business of renting, leasing or licensing real property. Accordingly, the tax liability assessed on the basis of the concessionaire fees being a license or a lease of land is reversed.
The County's "business" was to regulate the use of the beach in an orderly manner to preserve "individual peace and quiet" and to enhance the public's enjoyment of the beach. This was a requirement imposed upon it by the electors of Volusia County. The County's method of regulation was creative and admirable. The County has preserved and enhanced for the public the peace and enjoyment of the beach while defraying the cost of that regulation through purchases of concessionaire goods and services by the public *738 exercising their historic beach recreational rights. Unfortunately, Lloyd became sandwiched between that creativity and the equally creative assessments by the Department.

II. Unpaid Sales Taxes on Sales to Customers

The largest portion of the assessments at issue in this case relates to sales taxes, penalties, and interest which the Department determined were owed but not paid by the prior owners of the concessions, during the audit period before Lloyd owned and operated those businesses. Only minor assessments were made for sums owed by Lloyd as a corporation and as a sole proprietorship. Those amounts were paid and are not in dispute on appeal. The Department also found that Lloyd's record-keeping practices and documentation of taxable transactions were generally adequate and sufficient.
The 1989 version of section 212.10 imposed on a purchasing or successor-dealer the sales tax liabilities of a selling dealer under certain circumstances. Section 212.10 provided:
(1) If any dealer liable for any tax, interest, or penalty levied hereunder shall sell out his business or stock of goods, he shall make a final return and payment within 15 days after the date of selling the business; his successor, successors, or assigns shall withhold a sufficient portion of the purchase money to safely cover the account of such taxes, interest, or penalties due and unpaid until such former owner shall produce a receipt from the department showing that they have been paid or a certificate stating that no taxes, interest, or penalty are due. If the purchasers of a business or stock of goods shall fail to withhold a sufficient amount of the purchase money as above provided, he shall be personally liable for the payment of the taxes, interest, and penalties accruing and unpaid on account of the operation of the business by any former owner, owners, or assigns.
Neither Lloyd nor the sellers was aware of this statute at the time Lloyd purchased the concessions and Lloyd concedes it did not comply with the statute.
We do not reach, however, Lloyd's argument that section 212.10 is arbitrary and capricious and therfore unconstitutional. If an issue can be determined without declaring a statute unconstitutional, courts should endeavor to do so. State ex rel. City of Casselberry v. Mager, 356 So.2d 267 (Fla. 1978). We agree, however, with Lloyd that under the facts of this case and the statutory framework, the best estimate provisions of section 212.12(5)(b), Florida Statutes (1989), cannot be invoked to impose liability upon Lloyd as a "successor" dealer. Section 212.12(5)(b) provides:
(b) In the event any dealer or other person charged herein fails or refuses to make his records available for inspection so that no audit or examination has been made of the books and records of such dealer or person, fails or refuses to register as a dealer, fails to make a report and pay the tax as provided by this chapter, makes a grossly incorrect report or makes a report that is false or fraudulent, then, in such event, it shall be the duty of the department to make an assessment from an estimate based upon the best information then available to it for the taxable period of retail sales of such dealer, the gross proceeds from rentals, the total admissions received, amounts received from leases of tangible personal property by such dealer, or of the cost price of all articles of tangible personal property imported by the dealer for use or consumption or distribution or storage to be used or consumed in this state, or of the sales or cost price of all services the sale or use of which is taxable under this part, together with interest plus penalty, if such have accrued, as the case may be. Then the department shall proceed to collect such taxes, interest, and penalty on the basis of such assessment which shall be considered prima facie correct, and the burden to show the contrary shall rest upon the dealer, seller, owner, or lessor, as the case may be.
The Department invoked this section against Lloyd, not because Lloyd's records were inadequate or had not been tendered to the Department, but because the Department did not have the prior concessionaire's *739 sales tax records. The prior owners of spots 129 and 131 had partial sales tax records which were offered to the auditor, but they were rejected as inadequate. Lloyd tried to subpoena some of the other prior owners' records and tender them to the Department. However, Lloyd was not successful in obtaining enough of the prior dealers' records to satisfy the Department's auditors. The Department maintains that the responsibility to obtain adequate records of the predecessor is upon Lloyd. But there is no statutory authority for such a procedure during the audit stage of the tax proceedings and it is unlikely that a predecessor would voluntarily turn over those records to one without authority  especially if the predecessor understated sales as the Department has alleged.
Although the Department rejected the proffered prior concessionaires' records as "inadequate," it made no attempt to obtain the adequate records from the prior owners or any other source. In calculating the sums the prior owners (including Harold and Sheila Lloyd while operating as a sole proprietorship) should have paid to the state, the Department relied solely on the business records of Lloyd, after it was incorporated in 1989. The Department's assessment was premised solely on a projection method using Lloyd's own records, projected backward in time, and prorated to provide an estimated income and sales tax liability for the concession spots later operated by Lloyd.
Tax laws should be construed strongly in favor of the taxpayer and against the government with all ambiguities or doubts resolved in the taxpayer's favor. Maas Bros., Inc. v. Dickinson, 195 So.2d 193 (Fla. 1967); Florida S & L Services, Inc. v. Department of Revenue, 443 So.2d 120 (Fla. 1st DCA 1983); Rainey v. State, Dept. of Revenue, 353 So.2d 207 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 715 (Fla. 1978), citing, State ex rel. Seaboard Air Line R. Co. v. Gay, 160 Fla. 445, 35 So.2d 403 (1948). These courts explain:
This salutary principle is found in the reason that the duty to pay taxes, while necessary to the business of the sovereign, is still a duty of pure statutory creation and taxes may be collected only within the clear definite boundaries recited by statute ...
Maas Brothers, Inc., 195 So.2d at 198.
Section 212.12(5)(b) allows the Department to assess by guesstimates based upon selected available data, and then be afforded the presumption of correctness. These are rather Draconian provisions, to say the least. It seems clear from the language of section 212.12(5)(b) that its best estimate provisions should not come into operation unless the dealer or person to be charged has done something wrong or obstructive to prevent the Department from making a fair or ordinary audit. The statute provides for a best estimate when the dealer or other person charged fails to make "his records" available, fails to make a required report, or makes a false or grossly incorrect report. None of those circumstances occurred in this case and therefore the statutory provisions could not be invoked.
The Department's estimate relied solely on Lloyd's own, adequate, records for the more current years after Lloyd purchased the concessions. Records like these are not even listed in section 212.12(5)(b) as usable, even if that section were applicable. Section 212.12(5)(b) provides that the information used for the assessment must be based on "information then available to [the Department] for the taxable period of retail sales of such dealer... ." (Emphasis supplied).[4] The Department made no effort to obtain or project  or estimate  sales tax liabilities of the prior concessionaires on the basis of their own records which would have been for the relevant taxable period.
Accordingly, we reject the Department's sales tax assessment because, Lloyd not having been guilty of any default listed by the statute, the Department was not entitled to invoke section 212.12(5)(b). The Department's *740 audit was based on improper data and improper reliance on section 212.12(5)(b) and therefore the assessment of the predecessor's allegedly unpaid sales taxes against Lloyd is also reversed. See Southpointe Pharmacy v. Department of Health and Rehabilitative Services, 596 So.2d 106 (Fla. 1st DCA 1992); Department of Revenue v. Potamkin Dodge, Inc., 442 So.2d 287 (Fla. 3d DCA 1983), rev. denied, 451 So.2d 847 (Fla. 1984).
REVERSED.
PETERSON and DIAMANTIS, JJ., concur.
W. SHARP, J., concurs, and concurs specially with opinion.
W. SHARP, Judge, concurring and concurring specially.
I agree with the per curiam opinion in full, having researched and written a good bit of it, but I would go further than my colleagues in two regards. First, I do not think that under the current statutory and constitutional framework, that Volusia County could get into the taxable business of renting or licensing any portions of the public trust property on the beach. And second, I would hold that section 212.10, Florida Statutes (1989), as written and applied to Lloyd, is unconstitutional.
The first point deals with the issue of whether the bundle of rights granted to Lloyd by Volusia County under their Concessionaire Agreement can be viewed as a lease or license of real property by a person "who engages in the business of renting, leasing, letting or granting a license for the use of any real property."[1] The intent of the parties is key in determining whether a contract entered into by them should be construed as a lease or license of real property. 49 Am.Jur.2d, Landlord-Tenant §§ 1 and 11. In this case, the documents suggest no such intent, and the testimony of the parties at trial [the Lloyds as well as the attorney for the County] was that they did not intend to enter into a landlord/tenant relationship. Further, in order for a landlord/tenant relationship to arise, the landlord must have some right, title, or interest in the land which enables him to lease the property to another person.[2] Otherwise, any attempted lease is void.[3]
Much (perhaps too much), has been written about Florida's Public Trust Doctrine, which encompasses the beach and shore along the edge of the Atlantic Ocean and the Gulf of Mexico between the high water mark and low tide.[4] This is the area involved in Volusia's Unified Beach Code and Lloyd's Concession Agreements.[5] As many lengthy and eloquent authorities make clear, these lands belong to the State of Florida, impressed with the duty and responsibility to regulate them for the public's benefit. 42 Fla.Jur.2d Public Lands §§ 62, 64. In one of the Florida Supreme Court's seminal cases, White v. Hughes, 139 Fla. 54, 190 So. 446 (1939), the court said:
The state holds the foreshore in trust for its people for the purposes of navigation, fishing and bathing. It is difficult indeed to imagine a general and public right of fishing in the sea and from the shore unaccompanied by a general right to bathe there, and of access thereto from the foreshore for that purpose. Universal and habitual practice in England and America for many years has established this right, and *741 it is also recognized by a statute, which we will presently quote. Small inland streams and lakes, which are not navigable and not subject to the tides may under certain circumstances become private property to all intents and purposes, but not so the sea or its shore.
White, 190 So. at 449.
The Public Trust Doctrine prohibits the state from conveying the beach area and shore to individuals, although it can grant individuals limited uses, so long as it is consistent with the public's use and enjoyment. See State ex rel. Ellis v. Gerbing, 56 Fla. 603, 47 So. 353 (Fla. 1908); Odom v. Deltona Corp.; Watson v. Holland, 155 Fla. 342, 20 So.2d 388 (1944), cert. denied, 325 U.S. 839, 65 S.Ct. 1408, 89 L.Ed. 1965 (1945). An unauthorized lease of such property is void and illegal. See Escambia Land & Manufacturing Co. v. Ferry Pass Inspectors' & Shippers' Ass'n., 59 Fla. 239, 52 So. 715 (1910).
The Public Trust Doctrine was included as part of the 1968 Florida Constitution, Article 10 § 11. The 1970 Amendment provides private uses of such lands may be authorized by law, when not contrary to the public interest. No such statute or constitutional provision has been called to our attention which purports to give Volusia County the right to lease or convey a private interest in the beach areas covered by the County charter and ordinance.
By its charter and implementing ordinance, Volusia County has only been delegated the state's general powers to exercise, regulate and manage the beach areas in the County for the benefit of the general public. Amara v. Town of Daytona Beach Shores, 181 So.2d 722 (Fla. 1st DCA 1966); 78 Am.Jur.2d Waters § 3; Thompson on Real Property, Vol. 6 § 2987. That appears to be all that the charter and the beach ordinance purports to permit it to do. If the County sought to do more, without express statutory authority, the amended charter and beach ordinance would present constitutional problems.[6] This court said in City of New Smyrna Beach that the Charter authorized passing of the Beach Code for the purpose of "comprehensively regulating public health, safety and welfare on and pertaining to the [Atlantic Ocean] beach within the County," including vendors, concessionaires, and special events. It embraced the Public Trust Doctrine, and pertains solely to regulatory matters.
The exclusive right of the concessionaire to sell goods and services in a specified public location is more analogous to a franchise than a lease or a license for the use of real property. Franchises are not interests in land, but give the holder of the franchise the exclusive right to conduct a specific business in a particular area or location.[7] The exclusive nature of the right is the mechanism by which the governing body is able to limit the number of vendors operating on the beach. This is consistent with the County's duty to regulate the beach by maintaining order, and peace and quiet in the public's best interest. See City of Key West v. Marrone, 555 So.2d 439 (Fla. 3d DCA 1990).
It is not unusual or uncommon for franchises to last for specific time periods and pertain to a specific area or locality. Nor is it unusual in the franchise business for the holder of a franchise to be charged a percentage of gross profits as compensation for the franchise. But the grantor of a franchise, for example, need not own the real estate to which the franchise pertains. The two are not the same.
I agree that Volusia County is most clearly not in the business of renting, leasing, letting or granting a license for the use of any part of the public trust lands which comprise the public areas of the beaches within the County. See Lord Chumley's of Stuart, Inc. v. Department of Revenue, 401 So.2d 817 (Fla. 4th DCA 1981). If it were, then its business would be ultra vires and constitutionally prohibited. Thus, it follows that the concessionaire fees charged by Volusia County are not rent payments or license charges *742 for the use of real property, and no sales tax is due pursuant to section 212.031. See Department of Revenue v. Ryder System, Inc., 406 So.2d 1299 (Fla. 1st DCA 1981).
The second point deals with the constitutionality of section 212.10, Florida Statutes (1989). As it stood in 1989, section 212.10 imposed on a purchasing or successor-dealer sales tax liabilities for a selling dealer, without any mechanism available to the purchaser to ascertain what that liability may be, or any method to obtain a release from such unresolved and potentially unlimited liability. Section 212.10 provided:
(1) If any dealer liable for any tax, interest, or penalty levied hereunder shall sell out his business or stock of goods, he shall make a final return and payment within 15 days after the date of selling the business; his successor, successors, or assigns shall withhold a sufficient portion of the purchase money to safely cover the account of such taxes, interest, or penalties due and unpaid until such former owner shall produce a receipt from the department showing that they have been paid or a certificate stating that no taxes, interest, or penalty are due. If the purchasers of a business or stock of goods shall fail to withhold a sufficient amount of the purchase money as above provided, he shall be personally liable for the payment of the taxes, interest, and penalties accruing and unpaid on account of the operation of the business by any former owner, owners, or assigns.
At the time Lloyd purchased the other concessions involved in this case, neither seller nor buyer were aware of section 212.10 and Lloyd concedes it made no effort to comply with the statute. But had Lloyd sought to do so at the time of the transactions, the Department admits there was no statutory or regulatory mechanism in place by which it could have ascertained the prior owner's tax liability.[8]
Nor was there any way Lloyd could have required the Department to give Lloyd a receipt mentioned by section 212.10. The Department admitted it probably would not have done so[9] without auditing the prior owners,[10] which Lloyd had no right or ability to require the Department to do. And, even if a receipt is given, an amendment to this section "clarified" that the receipt does not guarantee there is no tax deficiency. Further, there is no assurance in this statute that the deposit put up by the purchasing dealer, even if it totalled the full purchase price for the concession, would protect it from greater personal liability. Such an arbitrary statute places an over broad burden on commerce, to the point of making sales of beach concessions totally impossible. As such, section 212.10 was constitutionally flawed when these transactions took place in 1989. See Amara v. Town of Daytona Beach Shores.
The Department argues that Lloyd should not be allowed to challenge the constitutionality of section 212.10 as written in 1989 because, although raised below, the hearing officer correctly declined to rule on that issue. See Metropolitan Dade County v. Department of Commerce, 365 So.2d 432 (Fla. 3d DCA 1978). However, district courts of appeal may pass on the constitutionality of a statute or rule when such action is necessary in reviewing agency action. See Key Haven Associated Enterprises, Inc. v. Board of Trustees of Internal Improvement Trust Fund, 427 So.2d 153 (Fla. 1982); Rice v. Department of Health and Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980). The tax assessment by the Department in this case necessarily stands or falls with section 212.10.
*743 In my view the statutory scheme of section 212.10 was so fatally flawed, that even if the tax projections had been properly made by the Department, the tax assessment could not have withstood constitutional challenge. Since it is likely the Department has and will continue to make tax assessments under this statute and the same issue will recur in other cases, I think it is appropriate to reach and resolve the constitutional issue, as a matter of judicial economy and aid in disposing of future proceedings. I would have held section 212.10 unconstitutional on its face, as well as the manner in which it was applied to Lloyd.
NOTES
[1] Volusia County Ordinance 88-32.
[2] The administrative code rule is not set forth in this opinion since it tracks the statute and is of little aid in determining the issues raised in this appeal.
[3] The title to the beach area occupied by Lloyd in its operation of its concessions was not an issue in these proceedings. Use of Florida beaches customarily used by the public is discussed in City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73 (Fla. 1974).
[4] The Department's principal auditor, Mr. Seyforth, testified:

Well, where the [prior owner's] records are not available to us, we use the best guessed estimate, which  I mean, without anything else, I mean to just pull numbers out of the air, I used what was available.
[1] See § 212.031, Fla. Stat. (1993).
[2] Boyer, Florida Real Estate Transactions 50.04; Thompson on Real Property, Vol. 3 1040 and Vol. 1A 215.
[3] St. Jude Harbors, Inc. v. Keegan, 295 So.2d 141 (Fla. 2d DCA), cert. denied, 304 So.2d 130 (Fla. 1974); Pennsylvania Electric Co. v. Shannon, 377 Pa. 352, 105 A.2d 55 (1954); 49 Am.Jur.2d Landlord-Tenant 44.
[4] See Odom v. Deltona Corp., 341 So.2d 977 (Fla. 1976); City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73 (Fla. 1974); White v. Hughes, 139 Fla. 54, 190 So. 446 (1939); Town of Atlantic Beach v. Oosterhoudt, 127 Fla. 159, 172 So. 687 (1937); Thiesen v. Gulf, F. & A. Ry. Co., 75 Fla. 28, 78 So. 491 (1917); State, Dept. of Natural Resources v. Contemp. Land Sales, Inc., 400 So.2d 488 (Fla. 5th DCA 1981).
[5] Boyer, Florida Real Estate Transactions 112.20[2][b]; 42 Fla.Jur.2d Public Lands 53; City of New Smyrna Beach v. Board of Trustees of Internal Improvement Trust Fund, 543 So.2d 824 (Fla. 5th DCA 1989).
[6] Art. 10 § 11, Fla. Const. See Decarion v. Martinez, 537 So.2d 1083 (Fla. 1st DCA 1989).
[7] See 1 Herbert T. Tiffany, The Law of Real Property 6 (3d ed. 1939); 12 Eugene McQuillin, The Law of Municipal Corps., 34.10 (3d rev. ed. 1986).
[8] Taxpayer information is confidential. See § 213.053, Fla. Stat. (1989). While a taxpayer may authorize the Department to divulge information concerning his account (213.053(2)), he is not required to so do nor may a third party obtain such information except under limited circumstances not present here.
[9] The auditor admitted at the hearing that until 1991 the purchaser could not obtain a statement from the Department regarding taxes. In 1991, section 212.10 was amended to allow either the seller or purchaser to obtain this statement. Ch. 91-112, 31, Laws of Fla. (1991).
[10] See Ch. 91-112 31, Laws of Fla.