GRIFFIN, J.
The Department of Revenue [“Department”] appeals the final judgment awarding declaratory relief in favor of Seminole Clubs, Inc., d/b/a/ Mayfair Country Club [“Mayfair”] denying the department’s claim for unpaid sales tax on a commercial lease. Because we conclude that sales tax was due on Mayfair’s capital expenditures made as a condition of occupancy, we reverse.
On March 11, 1981, Mayfair executed a sixty-seven year and seven month lease with the City of Sanford [“Sanford”] to operate a public golf club in Sanford, Florida. Paragraph 2 of the lease, entitled “Rentals,” provided:
Lessee covenants and agrees during the remaining term hereof, to spend annually on capital improvements, in lieu' of rent, first to the golf course itself until such time as the layout and condition of said course are satisfactory to Lessor, and then to building improvement and additional structures, the following sums: five percent (5%) of all gross revenue. Gross revenue shall be defined as all revenues derived from all sources except proceeds from the operation of the pro shop, as long as the pro shop is being operated by the pro as reimbursement to the pro. Pro shop proceeds shall include the sale of all merchandise, golfing equipment and proceeds from golf lessons but shall specifically exclude cart rentals. Quarterly and annual accountings shall be rendered to the City of Sanford as provided in paragraphs 18 and 19 of this lease. In the event any of the aforesaid sums, on an annual basis, are not spent in lieu of rent on such improvements, the same shall be paid as rent to the City. Capital improvements shall be defined as those types of improvements which become permanent in nature as compared to those improvements which are required only to maintain repair and condition; provided, however, the expenditures required herein for re-working and renovation of tees and greens shall be considered as capital improvements. It is further agreed that the above described sums may be carried over from year to year, for example: if Lessee expends during one year the sum of $25,000.00 in permanent improvements and if under the above described gross revenue formula $5,000.00 would be required during such year, the remaining $20,000.00 would be carried forward to subsequent years and credited toward future required expenditures under the above described formula.
Mayfair received two Notices of Proposed Assessments from the Department for the audit periods of June 1, 1988 through July 31, 1993 and October 1, 1991 through July 31, 1993. The Department sought the payment of $65,262.48 in back taxes and penalties. Mayfair protested the assessment in writing to the Department asserting that its capital improvements did not constitute rent under the lease.
*475 The Department issued a Notice of Decision which included the following summary of the issue presented:
The issue is whether certain capital improvements made by the taxpayerfles-see, and required by the terms of the lease agreement, constitute rental consideration flowing to the landlord and thus a taxable transaction ...
The Department determined that “the capital improvements were the consideration for the right to occupancy,” and were, thus, taxable under section 212.031, Florida Statutes.
The lower court concluded, based on the lease, that “rent” was payable to Sanford only if the agreed capital improvement expenditures of five percent of gross revenues were not expended. Because no such “rent” was paid, no tax was due. The court implicitly concluded that the five percent gross revenue expenditures were not “rent” because they were paid “in lieu of rent.”
We reject Mayfair’s argument that its lease was effectively “rentless” unless Mayfair did not meet its five percent of revenue quota. The capital improvements were made for the privilege of occupancy and, therefore, represented “rent in kind” taxable under Section 212.031, Florida Statutes (1991) and Florida Administrative Code Rule 12A-1.070.[1]
Although tax laws should be construed in favor of the taxpayer, the terms of the leasehold are clear. Lloyd Enterprises, Inc. v. Department of Revenue, 651 So.2d 735, 739 (Fla. 5th DCA 1995). In order to maintain possession of the property, Mayfair was required to perform one of three things: (1) expend five percent of gross revenues on capital improvements; (2) debit an accumulated carry forward balance by five percent of gross revenues; or (3) pay cash “rent” equal to five percent of gross revenues.[2]
REVERSED.
DAUKSCH, and HARRIS, JJ., concur.

. Rule 12A-1.070 provides in part as follows: (4)(b) The tax shall be paid at the rate of 5 percent prior to February 1, 1988, and 6 percent on or after February 1, 1988, on all considerations due and payable by the tenant or other person actually occupying, using, or entitled to use any real property to his landlord or other person for the privilege of use, occupancy, or the right to use or occupy any real property for any purpose.
[[Image here]]
(19)(b) The total consideration, whether direct or indirect, payments or credits, or other consideration in kind, furnished by the lessee to the lessor is subject to tax despite any relationship between the lessor and the lessee.

. We are not persuaded by Mayfair's argument that the capital improvements did not benefit the City as landlord because during the long-term lease they might be used up by Mayfair. It is enough that the improvements were made to city-owned property and, upon voluntary or involuntary termination of the lease, would remain city-owned.