FLETCHER, Judge.
IPC Sports, Inc. appeals a final administrative order of the State of Florida, Department of Revenue, which order upheld the assessment of sales and use tax, penalties and interest, and an assessment of a local government indigent care fee surtax, payable by IPC Sports, Inc. As the administrative hearing officer’s recommended order, upon which the Department’s final order was predicated, is comprehensive, we take the liberty of quoting the hearing officer’s statement of the issue, findings of fact, and conclusions of law. Where we disagree with any analysis or language of the conclusions of law, or wish to clarify, we have done so by footnote.

*331
STATEMENT OF THE ISSUE

Whether Miami-Dade County [County] is engaged in the business of leasing or granting a license for the use of real property, thus subjecting the payments to sales tax, pursuant to Section 212.031, Florida Statutes, when the County entered into an agreement with IPC Sports, Inc. [Petitioner or IPC] for the purpose of hosting a tennis tournament at the tennis center within Crandon Park, which is subject to a deed restriction to regulate the park in an orderly manner and to enhance the public’s enjoyment of the park.

FINDINGS OF FACT

1. Crandon Park is one of the largest public parks in the County, comprised of over 600 acres. The facilities at Crandon Park include a full service marina with hundreds of boat slips, an 18-hole golf course, lighted baseball fields, a soccer field, several miles of public beach with picnic and related facilities, and a tennis facility with approximately two dozen tennis courts [Tennis Center].
2. The property encompassed within Crandon Park was donated to the County pursuant to a special warranty deed executed by Malcolm and Julia C. Matheson dated April 25, 1940 [the Matheson Deed] with the following single restriction: ‘This conveyance is made upon the express condition that the lands hereby conveyed shall be perpetually used and maintained for public park purposes only ... ’ (emphasis added).
3. Except for restriction quoted in paragraph 2, the Matheson Deed does not contain any provisions relating to the regulation of activities in Crandon Park.
4. IPC is a Florida for-profit corporation.
5. On July 15, 1986, IPC and the County entered into a contractual agreement [hereinafter Agreement] pursuant to which IPC operates and conducts a professional tennis tournament [hereinafter Tournament], which is held during a period of approximately two weeks each year at the Tennis Center.
6. As outlined in the Agreement, the County and IPC each undertakes various responsibilities with respect to the operation of the Tournament. Paragraph 3 of the Second Amendment to the Agreement entitled ‘Amendments in Respect of Financial Arrangements,’ provides in pertinent part: ‘... IPC agrees that County shall be entitled to receive as and for its license fee under the Agreement and in lieu of any other payments which County would otherwise be entitled to receive under the Agreement and/or the first amendment thereto, for all of County’s obligations and agreements and all of IPC’s rights under the agreement as amended ... (emphasis supplied).’
7. In White v. Metropolitan Dade County, 563 So.2d 117 (Fla. 3d DCA 1990), the Third District Court of Appeal held that the County’s hosting of a tournament at the Tennis Center would be an eligible or permitted use by the County under the ‘public park purposes only’ restriction in the Matheson Family Deed, provided the public access to the rest of Crandon Park is not infringed; and the use of the Tennis Center is not *332 denied to the public for unreasonable periods of time. In the NOD [the Department’s initial ‘Notice of Decision’], the Department conceded that the ‘leasing or licensing of the land [ (i.e., the Tennis Center) ] for the ... Tournament is consistent with the ‘public park purposes’ restriction in the deed.’
8. The Tournament attracts over 200,-000 Miami-Dade County residents and visitors annually.
9. The County incurs significant costs in hosting the Tournament. These costs include costs for transportation, police service, maintenance, and construction and for making the Tennis Center ‘tournament-ready.’
10. The County incurs an annual cost of approximately $950,000 to $1,000,000 in performing its obligations under the Agreement.
11. There is no County ordinance that requires a tennis tournament be held in Crandon Park.
12. The fees paid to the County pursuant to the Agreement for the 1996 and 1997 tournaments were $517,880.43 and $560,385.68 respectively.
13. The Petitioner also collected a ticket surcharge of $120,000 in each of 1996 and 1997 for the County.
14. The Tournament is held over a period of approximately 14 days during which the public is encouraged to visit Crandon Park and attend the Tournament as spectators. During this period, IPC has sole use of the Tennis Center and the public is not permitted to play tennis at the Tennis Center and must purchase a ticket to be admitted as a spectator.
15. The Fees paid to the County and the ticket surcharge serve to partially defray the County’s costs attributable to hosting the Tournament; the Fees and the ticket surcharge are insufficient to cover all of the County’s costs. The County’s cost of hosting the Tournament exceeds the Fees and ticket surcharge; the County does not generate a profit with respect to the Agreement with Petitioner.
16. The County grants licenses or leases property to members of the public and also to the United States Tennis Association.[1].

CONCLUSIONS OF LAW

17. The Respondent has jurisdiction over the subject matter of and the parties to this proceeding pursuant to Chapter 212, Fla. Stat. and Section 120.57(2), Fla. Stat.
18. Section 120.57, Fla. Stat., limits respondent Department of Revenue’s burden of proof in a taxpayer contest proceeding to a showing (1) that an assessment has been made against the taxpayer; and (2) the factual and legal grounds for making the assessment. Section 120.80(14)(b)2, Fla. Stat. Once the Respondent has met this initial burden of proof, the burden shifts to the taxpayer to demonstrate by a preponderance of the evidence that the assessment is incorrect.
19. IPC does not qualify for any of the specific exemptions, as detailed in Sections 212.031(l)(a)l-ll and *333 212.08, or Section 196.199, Fla. Stat.
20. An exemption for ‘public purposes’ from sales and use taxes does not exist anywhere within the Florida Statutes or within the Department’s administrative rules.
21. It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license for the use of any real property. Section 212.031(l)(a), Fla. Stat.
22. Section 212.02(12), Fla. Stat. defines ‘person’ to include ‘... any political subdivision, municipality, state agency, bureau, or department ... ’
23. Section 212.02(2), Fla. Stat., defines ‘business’:
‘Business’ means any activity engaged in by any person, or caused to be engaged in by him or her, with the object of private or public gain, benefit, or advantage, either direct or indirect. Except for the sales of any aircraft, boat, mobile home, or motor vehicle, the term ‘business’ shall not be construed in this chapter to include occasional or isolated sales or transactions involving tangible person property or services by a person who does not hold himself or herself out as engaged in business, but includes ... all rentals of or licenses in real property ... (emphasis supplied).
24. Section 212.06(2)(i), Fla. Stat. provides one of the many alternative definitions of ‘dealer’:
‘Dealer’ also means and includes the state, county, municipality, any political subdivision, agency, bureau or department, or other state or local governmental instrumentality.
25. Pursuant to Section 212.031(l)(a), Fla. Stat., only a ‘person’ who ‘engages in the business’ of renting, leasing, letting, or granting a license for the use of any real property is exercising a taxable privilege. The term ‘person’ is defined to include political subdivisions and municipalities. Section 212.02(12), Fla. Stat. Thus, the County is deemed to be a ‘person’ for purposes of this law.
26. The First District Court of Appeal in Regal Kitchens, Inc. v. Florida Dept. of Revenue, 641 So.2d 158, 162-63 (Fla. 1st DCA 1994) held that the term ‘engaged in business’ was not limited to those who engaged in a regular course of dealing with different clients or customers, but could refer to even a single transaction.
27. There is no statutory or rule requirement that a person actually make a profit in order to qualify as being engaged in ‘business.’[2] Thus, the County cannot be excluded from being engaged in the business of leasing or licensing real property solely because it incurs significant expenses in connection with the tournament or incurs a loss.
28. Petitioner cites Lloyd Enterprises, Inc. v. Department of Revenue, 651 So.2d 735 (Fla. 5th DCA 1995), to support its position that the fee paid by IPC to the County is not taxable because the County receives the license fee in connection *334 with its regulation of Crandon Park pursuant to the Matheson deed restriction, which requires the property to be used for a public park purpose.
29. In Lloyd, the Volusia County electors approved an amendment to the Volusia County Charter, which required that the Volusia County government, by ordinance, ‘to define, protect, and enforce’ the public’s superior right to use the beach. Pursuant to this charter mandate, Volusia County enacted an ordinance known as the Unified Beach Code, which, among other things, provided that any private business granted the right to conduct operations on the beach was required to enter into a written agreement with Volusia County and pay fees referred to as concession license fees.
30. In Lloyd, Volusia County was required to regulate the existing commercial activity of beach vendors to promote the public health and welfare and the Court stated that ‘it is the ordinance that must be construed to determine whether the privilege granted to Lloyd constituted a lease or license of real property.’ Lloyd, at 737.
31. The Fifth District Court of Appeal held that ‘in exercising the duties imposed on it by the Unified Beach Code, the County did not enter into the business of renting, leasing or licensing real property. The County’s ‘business’ was to regulate the use of the beach in an orderly manner to preserve ‘individual peace and quiet and to enhance the public’s enjoyment of the beach.’ Lloyd at 737. As such, the fees paid by the taxpayer in Lloyd to Volusia County were not subject to sales tax under Section 212.031, Fla. Stat. In the instant case, the Petitioner is granted the exclusive right to use the Tennis Center during the two-week Tournament Period. The Tennis Center is open to spectators who pay the appropriate admission fees. Contrary to Lloyd, the instant case does not involve the police or regulatory power of the County at all.[3] Also contrary to Lloyd, in this case a tennis tournament did not exist at the time the County received the land by deed, nor was the County required by deed, ordinance or any other law to conduct a tournament. The County simply made a voluntary decision to enter into a license or lease agreement with a private for-profit entity and to give that private entity the sole use of the tennis center to conduct and operate a professional tennis tournament.
32. Petitioner correctly notes that Vo-lusia County in Lloyd was not engaged in the business of leasing real property, but rather assumed the obligations set forth in the County Uniform Beach Code of enhancing the public image of the beach area, including the enjoyment by the public of the use of the beach; preserving the peace and quiet of the beaches; and, regulating the beach concessionaires in their delivery of goods and services to ensure those ‘... are provided to the public without disruptive competition.’
33. The type of obligation imposed on the County by the Matheson deed *335 and the Lloyd ordinance are very-different. The Matheson deed restriction is brief and only contains the single requirement that the property ‘shall be perpetually used and maintained for public park purposes only.’ The deed does not require the County to regulate or participate in any business enterprise.[4] In contrast, in Lloyd the Volusia County ordinance is specific and uses various terms to describe its purposes, for example: ‘the County is ‘trustee of the public interest’ in exercising its power to regulate private vendors making use of the public beach; vendors are to pay a ‘franchise fee’; and a ‘concession license’ is required.’ Lloyd, at 737.
34.In Lloyd, the ordinance also required Volusia County to collect a license fee from all beach vendors. The ordinance was enacted to satisfy the requirement in the Volusia County Home Rule Charter that Volusia County define, protect and enforce the public beaches. Hence, the concessionaire licenses and fees became a requirement pursuant to this specific ordinance. On the contrary, the Matheson deed merely requires the County to use and maintain the subject property ‘for public park purposes.’ The Mathe-son deed does not require any specific act by the County. In particular, the County is not required to host a tennis tournament, nor is it required to build a tennis center upon the property, nor is it required to enter into any agreement with any entities to host such a tournament. The hosting of the tennis tournament is a-result of a voluntary agreement between the County and IPC, and is not the result of a county or city ordinance.[5]
35. The ordinance in Lloyd, was enacted in recognition of the public’s superior right to use the beach. Lloyd, at 737. The ordinance enhances and protects that right. In contrast, the arrangement between the County and IPC actually serves to diminish the public’s right to use the park. The arrangement prevents the public from using the park’s Tennis Center for a least three weeks per tournament.
36. In the instant case, the County has fee simple ownership of the land subject to the Agreement, only subject to the condition that it be used for public park purposes. In Lloyd, the County did not own the beaches[6] upon which the beach vendors engaged in their activities and could not prohibit vendors from engaging in business on the beaches. Article X, Section 11, Florida Constitution.
37. A licensor or lessor must possess some right, title, or interest in the land, which enables him or her to lease or license the property to another person. Otherwise, any attempt at leasing the property is void. See, e.g., St. Jude Harbors v. Keegan, 295 So.2d 141 (Fla. 2d DCA 1974), holding that sellers of *336 land could not sell land that they did not own. Here, the County has sufficient right, title, and interest in the Crandon Park property, which allows it to lease or license the use of such property.[7]
38. The Legislature intended that county and municipal governments could be engaged in the trade or business of leasing or licensing real property, notwithstanding that it is not their primary trade or business function. The fact that a county is engaged in licensing real property to a commercial operator does not mean that such property is no longer being used for public park purposes. White v. Metropolitan Dade County, 563 So.2d 117, 124 (Fla. 3d DCA 1990).
39. IPC and the County voluntarily entered into the agreement whereby IPC pays a fee to the County for the exclusive use of real property owned by the County in order for IPC to host a professional tennis tournament from which it realizes a monetary profit. Because the County is engaged in the business of leasing or granting a license to use real property, and neither the County [nor] IPC is entitled to any exemption, the tax is due and owing upon such lease or license fee paid by IPC pursuant to said Agreement. As a lessee or licensee of such property, IPC has the obligation to pay tax with respect to that privilege. The County’s Agreement granting a license to IPC is not an isolated event, since the County also grants other licenses or leases of real property to others, including the public and the United States Tennis Association. Therefore, the County is engaged in the business of licensing real property with respect to the relationship governed by the Agreement and the Fees are therefore taxable pursuant to Section 212.031, Fla. Stat.
40.IPC, as the licensee and user of the tennis center, has an obligation for the payment of the tax. See Section 212.07(8), Fla. Stat. The Supreme Court of Florida held in Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327 (Fla.1989), that
it is evident from the language of both Section 212.03 and Section 212.031 that the burden is on the lessor to remit the tax to the state. §§ 212.03(2), 212.031(3). We believe it is equally clear that the plain language of these statutes and the public policy of this state require the lessee to pay the tax. §§ 212.03(2), 212.031(2)(a), 212.031(3). Gaulden v. Kirk, 47 So.2d 567 (Fla.1950).
Affirmed.

. This finding differentiates the instant situation from that of Volusia County in Lloyd Enterprises, Inc. v. Department of Revenue, 651 So.2d 735 (Fla. 5th DCA 1995), discussed, infra. (3d DCA note).

. Pursuant to Section 212.02(2) 'business' includes activities engaged in with the object of public benefit. Under the logic of White v. Metropolitan Dade County, supra, the tennis tournament is a public benefit (public park purpose). (3d DCA note)

. Whatever is said or done about "regulation,” Miami-Dade County’s licensing or leasing the property is the controlling factor. (3d DCA note).

. See footnote 3.

. A distinction without a difference. Again, it is Miami-Dade County's licensing or leasing property that is the controlling factor. (3d DCA note).

.The absence of ownership precludes licensing or leasing. (The emphasis is ours.)(3d DCA note).

. Contrary to Volusia County's lack of any ownership interest in the property discussed in Lloyd. (3d DCA note).