**In re HEALTH AMERICA MEDICAL GROUP, INC., Debtor.**

No. 01–04823–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 3, 2003.

David W. Steen, McWhirter, Reeves, Tampa, FL, for debtor.

Michael C. Markham, Johnson, Blakely, Pope, Bokor et al., Clearwater, FL, Dawn A. Carapella, Trenam, Kemker et al., Tampa, FL, for creditor.

### ORDER ON MOTION TO ENFORCE CONFIRMED PLAN

(Doc. No. 338)

ALEXANDER L. PASKAY, Chief Judge.

This is a confirmed Chapter 11 case, and as a matter of fact on January 3, 2003, this Court entered its Final Decree (Doc. No. 331) technically closing the administration of the Chapter 11 case. The difficulty in the present controversy has its origin in an unresolved Application for Allowance of Administrative Expense (Application) (Doc. No. 202), filed by Byron F. Deming (Deming) on January 24, 2002, or not only prior to the entry of the Final Decree but also prior to the entry of the final Order Confirming Plan (Doc. No. 262).

The particular matter under consideration is a Motion to Enforce Confirmed Plan (Doc. No. 338), filed by Deming on February 12, 2003. In order to place the issue raised by the Motion into proper perspective, a brief recap of the relevant procedural events preceding the Motion presently under consideration appropriate to be considered and they are as follows. As noted earlier, on January 24, 2002, Deming filed an Application for Administrative Expense (Deming's Ex. 1). In his Application, Deming contended that he had a one half interest in certain real property occupied by the Health America Medical Group, Inc. (Debtor) under a lease agreement between the Debtor and Bay

Area Medical Plaza Ltd. (Bay Area), the co-owner of the property with Deming.

On April 11, 2002, this Court entered an Order Conditionally Confirming the Debtor's Plan of Reorganization (Deming's Ex. 3). The Conditional Confirmation Order provided *inter alia* in paragraph 1.G. as follows:

The debtor shall pay Deming $7,758.60 per month for so long as the Debtor occupies the subject real property; Deming has an interest in the subject real property; and the Debtor is not required to pay rent to any other party.... The Debtor shall cooperate with Deming in good faith to preserve Deming's interest in the subject real property.

The Conditional Confirmation Order was an interim order and on April 29, 2002, this Court entered the final Order Confirming Plan (Deming's Ex. 4). The Final Order specifically incorporated all provisions of the Conditional Confirmation Order with the notable exception of decretal 6 of the Conditional Confirmation Order, which conditioned confirmation pending a determination of the administrative expense claim by Bay Area. It should also be noted that on May 21, 2002, this Court entered an Order on the Application (Doc. No. 284), denying the same as moot as a result of the specific language in the Conditional Confirmation Order regarding both Deming's administrative and unsecured claims.

Prior to the commencement of this Chapter 11 case, and all during the pendency of the Chapter 11 case, Deming received one-half of the rent payment made by the Debtor for the occupancy of the premises up to and including the month of October 2002. Although Deming was not formally part of the lease, it is without dispute that the Debtor did not pay Bay Area but paid Deming directly.

It is also without dispute that the property, which was occupied by the Debtor, was subject to a first mortgage held by HR Acquisition I Corporation f/k/a Capstone Capital Corporation (HR Acquisition), who in the early part of the year 2002, initiated a state court action to foreclose upon its mortgage in the Twelfth Circuit Court in and for Manatee County, Florida. In due course, the Debtor filed its Answer coupled with several affirmative defenses. Deming also filed his Answer and asserted several affirmative defenses to the foreclosure (Deming's Ex.'s 7 & 8).

During the pendency of the foreclosure action, HR Acquisition filed its Motion for Summary Judgment, which was scheduled for consideration on November 12, 2002. According to the testimony of the Debtor representative, in order to assure that it would remain in possession and operate its extensive medical facility during this season, it entered into a settlement agreement with HR Acquisition on or about October 30, 2002, which was memorialized in a Joint Motion for Judicial Approval. The Settlement Agreement provided, *inter alia*, that the Debtor would not use all of the space available in the building but agreed to occupy up to 30,000 square feet of the building for a total of $25,000 per month, with payment beginning on October 1, 2002, due at the end of the month. Under the Settlement Agreement, with the heading entitled "Monthly Settlement Payments and Possession," the Debtor agreed to pay this amount, until January 1, 2003, when the Debtor would pay HR Acquisition $12.00 a square foot for its occupancy of the premises. Once the certificate of title was issued to HR Acquisition, the Debtor would only be able to occupy the premises until June 30, 2003.

There is no evidence in this record that HR Acquisition sought a Writ of Posses-

sion or the appointment of a receiver during the pendency of the foreclosure action. Nevertheless, apparently the Debtor was apprehensive that it might lose its right of possession on short notice in the middle of the season, which would have had a disastrous effect on the medical facility. According to the Debtor, this was the motivating factor for entering into the Settlement Agreement.

The First Amendment to Settlement Agreement (Db.'s Ex. 2), dated December 13, 2002, provided that the Debtor agreed to occupy the premises for the payment of $39,774 each month, beginning on January 1, 2003. The First Amendment also provided that the Settlement Agreement would expire on June 30, 2003, or on the date on which the title to the property vested to HR Acquisition or such other party as may be the highest bidder at the foreclosure sale. The Second Amendment to Settlement Agreement (Db's Ex. 3), dated December 18, 2002, merely makes reference to the execution of a "Lease Agreement" entered into by HR Acquisition as "lessor" and the Debtor as "lessee." The Lease Agreement (Db.'s Ex. 4) is dated December 13, 2002. It should be noted, at this point, that HR Acquisition was not the owner of the subject property and the property was still owned by Bay Area and Deming, notwithstanding the fact that the "Lease" labels HR Acquisition as the "lessor."

On February 12, 2003, Deming filed the current Motion under consideration. Deming contends that the Plan requires a payment by the Debtor to Deming of $7,758.60 per month for so long as the Debtor occupies the real property, Deming has an interest in the subject real property, and the Debtor is not paying rent to any other party. It is without dispute that all payments to Deming stopped by November of 2002, and the foreclosure was concluded and a sale was held on March 5, 2003, although the Certificate of Title was not issued until March 24, 2003 (Deming's Ex. 6).

On April 21, 2003, this Court entered an Order granting Deming's Motion to Enforce Confirmed Plan (Interim Order) (Doc. No. 351). The Interim Order provides *inter alia* that the Debtor shall make distribution to Class Seventeen creditors with the allowed unsecured claims on or before April 25, 2003, and schedules a Final Evidentiary Hearing for May 20, 2003, with respect to the administrative priority claim of Deming, the precise matter currently under consideration.

Based on these facts, it is Deming's contention that it is without dispute that his entitlement for payment of administrative expense, as provided for by the Confirmation Order, has been established. First, because it is without dispute that the Debtor did occupy the subject premises during the period between November 2002 and March 24, 2003. Second, that during this period, Deming still had a cognizable half ownership interest in the subject property until March 24, 2003. And third, the Debtor was not required to pay rent to any other party. Deming's claim, based on these facts, is in the total amount of $37,041.06. In the alternative, Deming contends that in the event this Court determines that Deming's interest in the subject property was terminated on March 5, 2003, the claim should be in the amount of $32,285.79.

In opposition of the propositions urged by Deming, the Debtor contends first that this Court lacks subject matter jurisdiction and therefore Deming's Motion to Enforce the Confirmed Plan should be summarily denied. Furthermore, the Debtor relies on the provision in the Confirmation Order that the Debtor was relieved of paying Deming once it began paying HR

Acquisition. In support of this proposition, the Debtor contends that while it admits that during the relevant time HR Acquisition was not the legal owner of the property, nevertheless, the amounts paid by the Debtor for the use and occupancy of the premises in question was in fact "rent." Therefore, the Debtor's monetary obligation to Deming terminated by November of 2002. In support of this proposition, the Debtor cites two cases: *Department of Revenue v. Seminole Clubs, Inc.*, 745 So.2d 473 (Fla. 5th DCA 1999) and *Lloyd Enters. v. Department of Revenue*, 651 So.2d 735 (Fla. 5th DCA 1995).

■ Obviously, the initial inquiry must be addressed to the contention of the Debtor that this Court lacks subject matter jurisdiction to consider the Motion to Enforce the Confirmed Plan. This proposition is based on the fact that on January 3, 2003, this Court entered the Final Decree and therefore, the Debtor alleges that this Court no longer has jurisdiction to consider any matters concerning this particular Debtor. This proposition does not bear close analysis, and the validity of which is totally belied by this record. Deming's original Application was filed before the entry of the Confirmation Order and certainly before the Final Decree. It was clearly understood by all that this Court would consider the Application in due course. With the entry of the Order on the Application denying the same as moot as a result of the language in the Conditional Confirmation Order, this Court continued to maintain jurisdiction over this issue. Moreover, this Court scheduled a preliminary hearing on the Motion to Enforce the Confirmed Plan at which time, the Debtor participated and raised no jurisdictional objection. Neither, did the Debtor challenge the Interim Order entered on April 21, 2003, which scheduled the very Motion currently under consider-

ation. It should be evident from the foregoing that the unresolved issue raised by the timely filed Application by Deming was still part and parcel to the administration of this Chapter 11 case, notwithstanding the entry of a Final Decree, which would have technically closed the administration of this case. In sum, this Court is satisfied that the jurisdictional challenge on Deming's right to have this present Motion to be considered by this Court is without merit.

■ This leads to the consideration of the ultimate question, which is: Should Deming's right to the allowance of administrative expense claim, which is in essence rent, for the period of November 2002 up to and including March 24, 2003, be allowed and accorded first priority pursuant to Section 503 of the Code. This issue centers around paragraph 1.G. of the Conditional Confirmation Order wherein the Debtor is required to pay Deming $7,758.60 per month if three conditions are met: (1) the debtor must continue to occupy the subject real property; (2) Deming must continue to have an interest in the subject real property; and (3) the Debtor is not required to pay rent to any other party.

It is without dispute that the first and second conditions were met. The last condition is at the heart of this dispute. This Court is satisfied that the record does not support the Debtor's contention that settlement payments to HR Acquisition was "rent." The settlement payments were in consideration of HR Acquisition's forbearance of seeking a post-judgment writ of possession and dispossessing the Debtors. *See* section entitled "Monthly Settlement Payments and Possession" of Settlement Agreement. Moreover, this Court is satisfied that the payments by Debtor to HR Acquisition were not rent because HR Acquisition was not the owner of the real

property at the time that the "payments" were tendered notwithstanding the "Lease Agreement." In this instance, substance over form prevails. This record leaves no doubt that the relationship between the Debtor and HR Acquisition was not one of landlord/tenant. Finally, this Court finds unpersuasive the cases cited by the Debtor inasmuch as the facts in those cases, involving the Department of Revenue, are not analogous to the case at hand.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Enforce Confirmed Plan be, and the same is hereby, granted. Deming is entitled to a priority expense claim in the amount of $37,041.06.