## Jones versus Wagner et al.

　　1. By partition the surface was severed from the underlying coal and the parts were allotted to different heirs, without any limitation as to the removal of coal. *Held,* that the owner of the coal could not remove it without leaving sufficient support for the surface.

[*Jones v.* Wagner.]

2. The mining property is servient to the surface to the extent of sufficient supports to sustain it, and on default the owners and workers are liable for damages.

3. To control the rule of the common law, an usage to mine without observing this duty, must be so ancient and uniform in the particular region as to amount to a custom.

4. Such custom must be so ancient, that the memory of man runneth not to the contrary.

5. The upper and underground estates are governed as other estates, by the maxim, *sic utere tuo ut alienum non lædas.*

November 7th and 8th 1870. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the District Court of *Allegheny county:* No. 169, to October and November Term 1869.

This was an action on the case by Christian Wagner against Benjamin F. Jones and others, to April Term 1868. The declaration set out that the plaintiff was possessed of a piece of land containing 4 acres, and that the defendants removed the coal underlying the tract in "so negligent, careless and unskilful a manner, and without leaving proper pillars, ribs and supports," that the surface caved in, greatly damaging the land, the dwelling-house and other buildings, the fences and fruit trees, and prevented the plaintiff from having the full benefit and enjoyment thereof, &c.

The land of the plaintiff was part of a tract called *Bergen-op-Zoon,* late of the estate of John Ormsby, deceased. By proceedings in partition in October 1855, the coal was severed from the surface:—the surface, of which the plaintiff's land is a part, was allotted to the children of Sidney Gregg, and the coal purpart underlying 75 acres of the Greggs' allotment was allotted to Christian Ihmsen. In the proceedings in partition there were no limitations, conditions or restrictions imposed on either estate in respect to the manner of mining and removing the coal, or to any other matter.

By subsequent transmissions, Ihmsen's coal estate vested in the defendants, October 18th 1856, and 4 acres of the estate of the Greggs became vested in the plaintiff on the 7th of July 1866. At the time the plaintiff's title vested in him, no coal had been excavated under it. In 1867 and 1868 the defendants removed all the coal under plaintiff's tract, except a pillar partly under or near the plaintiff's house. The result was that the surface sank, injuring the house, &c. There was evidence as to the manner in which the coal was removed by the defendants; that it was removed as it was everywhere in the neighborhood; that at the time of the partition and since, it was the custom in the bituminous coal region to take out coal without leaving any pillars or supports; that, independently of not leaving supports, the defendants mined with proper care and skill, &c.

[Jones v. Wagner.]

The plaintiff asked the court to charge :—

1. If the jury believe from the testimony that in consequence of the removal by the defendants of the coal underlying the plaintiff's grounds, the surface of plaintiff's ground sunk, fell or caved in, so as to cause damage thereto, and to the plaintiff's buildings upon the said grounds, they should find a verdict for the plaintiff in such damages as they believe from the testimony the plaintiff has sustained.

2. If the jury believe from the testimony that the defendants, in removing the coal underlying the ground of the plaintiff, did not leave sufficient ribs, pillars or dirt to support the surface of said ground, or did not, in place of ribs, pillars or dirt, erect or set up posts or other supports, sufficient in number and strength to support the surface of said ground, in consequence whereof the surface of said plaintiff's ground sunk, became depressed, fell and caved in, causing damage to the said plaintiff's ground, and to the building thereupon, then their verdict should be for the plaintiff in such damages as they believe from the testimony the plaintiff has sustained by reason of such sinking, depression, falling or caving in of the plaintiff's ground.

4. That no custom or usage as to the manner of mining or taking out coal can avail the defendants in this case, as they cannot establish, by custom or usage, a right to remove the coal in such a manner as to leave the surface unsupported.

The court affirmed each of the foregoing points of the plaintiff, reserving for the consideration of the court in banc the questions raised by them.

The defendants requested the court to charge :—

1. That in virtue of the proceedings in the Orphans' Court for the partition of "Bergen-op-Zoon," the coal under the surface of the lot now of the plaintiff was severed from the surface and became a distinct corporeal estate, and the owners of the coal had the right to mine and take it out according to the custom of mining coal in this region, without liability to the owner of the surface for consequential damages, provided they mined and took out the coal with proper care and skill, and without any negligence in the operation of mining and taking out the coal.

Answer: "The first proposition in this point as to the severance of the coal from the surface, and that the coal became thereby a distinct corporeal estate, affirmed, but the rest of point refused and question reserved."

2. That upon the whole evidence the verdict should be for the defendants.

Answer: "Refused, but question reserved."

Hampton, P. J., concluded his charge as follows :—

* * * ["We shall therefore reserve the questions presented by

[Jones *v.* Wagner.]

the learned counsel for the determination of the court in banc, and submit to you the question of damages.

"If you find from the evidence that the plaintiff's property has been injured by the coal being mined and taken out as it was by the defendants, we instruct you, for the present, that he is entitled to recover damages in this action for whatever injury he has sustained by reason of the coal being thus taken out before the bringing of suit. This will include the injury to his house, fences, trees, vines and for the surface being rendered unfit for agricultural purposes."] * * *

The jury found for the plaintiff $1000.

Afterwards the court in banc (Hampton, P. J., delivering the opinion) entered judgment on the verdict on the reserved questions.

The defendants took a writ of error, assigning for error the answers to the points, the part of the charge in brackets, and entering judgment on the verdict.

*M. W. Acheson*, for plaintiffs in error.—The manner of mining is to be controlled by the custom in the coal region: Smart *v.* Morton, 30 Eng. Law & Eq., 385; Rowbotham *v.* Wilson, 8 H. of L. 348. The grant of coal in the soil gives the full right to dig and carry it away with all the means to obtain it: Caldwell *v.* Fulton, 7 Casey 475; Sheppard's Touchstone, ch. 5, p. 89; and is inconsistent with any dominion in another: Clement *v.* Youngman, 4 Wright 341; Brown *v.* Corey, 7 Id. 495; Penna. Salt Co. *v.* Neel, 4 P. F. Smith 9; Whitaker *v.* Brown, 10 Wright 197; Turner *v.* Reynolds, 11 Harris 199; Irwin *v.* Covode, 12 Id. 167. The defendants were bound to use their rights carefully, in accordance with the established practice of mining: Ratcliff *v.* Mayor of Brooklyn, 4 Comstock 185; Clark & Foot, 8 Johns. R. 421; Frankford & B. T. Co. *v.* The Phila. & T. Railroad, 4 P. F. Smith 345; Panton *v.* Holland, 17 Johns. R. 92; Rockwood *v.* Wilson, 11 Cushing 221; Bentz *v.* Armstrong, 8 W. & S. 40; Haldeman *v.* Bruckhart, 9 Wright 514; Wheatley *v.* Baugh, 1 Casey 528; Smith *v.* Kenrick, 7 Mann. G. & S. 515. Proof of usage is admissible to interpret a contract: 1 Greenlf. Ev. §§ 292, 294; 2 Parsons on Cont. 49; Dwight *v.* Whitney, 15 Pick. 179; Stultz *v.* Dickey, 5 Binn. 285; Aughinbaugh *v.* Coppenheffer, 5 P. F. Smith 347; Taylor's Land. & Ten. §§ 350, 538, 554; Van Ness *v.* Pacard, 2 Peters 137; McCullough *v.* Irvine, 1 Harris 438. The house having been built after the partition, the right to a support for the soil does not extend to the building: Washburne on Easements 441 et seq.

*S. M. Raymond* and *C. B. M. Smith*, for defendant in error. —By the partition a servitude to support the soil was imposed on

[Jones v. Wagner.]

the coal estate: Washburne on Easements 16, 17; Kieffer v. Imhoff, 2 Casey 438. The contract rights of the parties cannot be controlled by custom: Stoever v. Whitman, 6 Binn. 416. To establish a custom the right must be ancient, certain, uniform and reasonable: Rapp v. Palmer, 3 Watts 179; Newbold v. Wright, 4 Rawle 212; Cox v. Heisley, 7 Harris 243; Foley v. Mason, 6 Md. 37; Jordan v. Meredith, 3 Yeates 318; Henry v. Risk, 1 Dallas 265; Frith v. Barker, 2 Johnson 327; Brown v. Jackson, 2 Wash. C. C. 24; Holmes v. Johnson, 6 Wright 159. The surface is entitled to support from the subjacent soil; Humphries v. Brogden, 1 Eng. L. & E. 241; Harris v. Ridyng, 5 M. & W. 59; The Earl of Glasgow v. The H. & C. Alum Co. 8 Eng. L. & E. 13; Farrand v. Marshall, 19 Barbour 380; Richardson v. Vermont C. Railroad, 25 Vermont 465.

The opinion of the court was delivered, February 9th 1871, by
THOMPSON, C. J.—The piece of ground out of which the controversy in this case has arisen, formerly belonged to John Ormsby's estate, and in the partition of that estate in November 1855, the minerals in, and the surface of the land were separated and made to constitute two separate and distinct properties or estates, without any restriction, limitation or servitude imposed on either, and were so allotted among two of Ormsby's heirs. The plaintiff claims title to the surface through the heir to whom it was allotted, and so do the defendants to the minerals from another heir to whom they were allotted.

The question in the court below and here, is whether the latter have by their unrestricted title, the right to mine and take out *all* the coal underlying the surface, without liability for injury thereto, or to buildings and improvements thereupon by subsidence or otherwise. The learned judge below reserved the point and submitted to the jury the question of injury; to what amount, and whether it arose from unskilful or negligent mining in not leaving sufficient pillars or props in the mine to sustain intact the surface. On this question the jury found for the plaintiff, and at a subsequent day the court ruled the reserved question also in his favor and entered judgment on the verdict. From this statement it will appear, that the only negligence or unskilfulness at all attributable to the defendants, if any, arose from not leaving sufficient pillars of coal or supports to sustain the surface, and this they undoubtedly did not, most probably under the belief that all the coals in the mine belonged to them by virtue of their purchase and title. This was certainly true with the exposition of such a right given by Baron Parke in Harris v. Ryding, 5 M. & W. 60: "I do not mean to say," observed that able judge, "that all the coal does not belong to the defendants, *but they cannot get it without leaving proper supports.*"

16 P. F. SMITH—28

[Jones *v.* Wagner.]

The right of supports, *ex jure naturæ*, which the owner of the soil is entitled to receive from the minerals underneath, has, within comparatively a few years, received much attention in the courts in England, and the rule deducible from the cases in all the courts, the House of Lords, Exchequer and Queen's Bench, is, that where there is no restriction or contract to the contrary, the subterranean or mining property is subservient to the surface to the extent of sufficient supports to sustain the latter, or in default, there is liability to damages by the owners or workers of the former for any injury consequent thereon to the latter. This is fully supported by Harris *v.* Ryding, 5 M. & W. *supra*, determined at Easter Term 1839, in the Exchequer; Humphries *v.* Brogden, 1 Eng. Law & Eq. 251 (1850), in the Queen's Bench before Lord Campbell, C. J., and Patteson, Coleridge and Erle, JJ. The whole question was there discussed most learnedly and ably by the Lord C. J., and the same result arrived at as had been in the Court of Exchequer, *supra*, and in the case of The Earl of Glasgow *v.* The Hurlet Alum Co., House of Lords in 1850, 8 Eng. Law and Eq. 13. There are many other cases referred to in the English courts to the same effect, by Rogers on Mining, p. 455, *et seq.* Among them are Rowbotham *v.* Wilson, 8 H. L. Ca. 348; Pennington *v.* Gallard, 9 Exch. 1, for the principle stated by the learned author at page 467 : " That if an owner of lands grant a lease of the minerals beneath the surface with power to work and get them in the most general terms, still the lessee must leave a reasonable support for the surface, and so conversely, where the minerals are demised and the surface is retained by the lessor, there arises a primâ facie inference at common law, upon every such demise, that the lessor is demising them in such a manner as is consistent with the retention by himself of his own right of support." These citations prove two things, viz., that the owner of a mineral estate, if the law be not controlled by the conveyance, owes a servitude to the superincumbent estate, of sufficient supports; consequently the failure to do so is negligence, and so may be declared upon: Humphries *v.* Brogden, *supra*.

A usage to mine without the observance of this duty by defendants must have been so ancient and uniform in the region in which the property is situated, as to amount to a custom or usage capable of controlling the rule of the common law cited above, and of becoming the law itself. One element of such a custom would be, that it is so ancient " that the memory of man runneth not to the contrary." This could not be, and was hardly pretended of the locality in question. Nor is it likely that in a business like mining bituminous coal, found only in the western counties of the state, there ever was any rule there other than that which would result from convenience.

[Jones *v.* Wagner.]

As to the house in question damaged, it undoubtedly had a right to supports as incident to the ground on which it stood. What might be the consequence of building in an unreasonable manner, taking into view the mining rights beneath, on a question of the sufficiency of the supports, does not arise in this case and need not be decided.

We have no case strictly of authority in our books, nor do I find any in the books of our sister states. In most of them but little subterranean mining exists, and in others the question has not presented itself for adjudication. In none of the cases cited by the learned counsel from our state reports, is the question decided or intentionally touched; we therefore must rule the point for ourselves for the first time. The English cases referred to, and others which might be referred to, emanate from great ability, and from a country in which mining, its consequences and effects, are more practical, and the experience greater, than in any other country of which we possess any knowledge. We think it safe, therefore, to follow its lead in this matter, and hold that in the case in hand, the recovery was right, predicated as it was of the want of sufficient supports in the mine to prevent the plaintiff's ground, house and orchard, from injury by subsiding into the cavity made in the earth by the removal of the coal. The upper and underground estates being several, they are governed by the same maxim which limits the use of property otherwise situated, *sic utere tuo et alienum non lædas.* We have no doubt but all the evils deprecated by the adoption of this rule will disappear under regulations adapted to each case of severance of the soil from the minerals. Contract may devote the whole minerals to the enjoyment of the purchaser, without supports, if the parties choose. If not, the loss by maintaining pillars or putting in props will necessarily come out of the value of the mineral estate. If at any time the public necessities may demand the pillars to be removed for fuel, we may safely assume that the same necessity will provide some rule which will be satisfactory in such a crisis. We think the case was well decided below, and that the judgment must be affirmed.