Pennsylvania Electric Company *v.* Shannon, Appellant.

Argued January 14, 1954. Before Stern, C. J., Stearne, Jones, Chidsey, Musmanno and Arnold, JJ.

reargument refused June 5, 1954.

*Earl F. Reed,* with him *J. Roland Johnston, Frank J. Gaffney, Samuel R. Stewart, John H. Jordan* and *Thorp, Reed & Armstrong,* for appellants.

*Frank G. Smith,* with him *Robert V. Maine* and *Smith, Maine, Whitsett & Lee,* for appellee.

Opinion Per Curiam, April 24, 1954:

All of the issues litigated below in this proceeding were fully and correctly disposed of in the opinion of Judge Walter I. Anderson of the 19th Judicial District, specially presiding. A question concerning alleged rights in Spencer S. Shannon under a coal lease from Midlothian Coal Company, assigned to William Reed, which the appellants belatedly sought to raise on this appeal, was neither presented to nor passed upon by the learned court below. It cannot, therefore, be injected here: *Muse-Art Corporation v. Phila-*

354

*delphia,* 373 Pa. 329, 332-333, 95 A. 2d 542, and *Bourd v. Berman,* 359 Pa. 183, 185, 58 A. 2d 442. For a collation of earlier decisions, see also *Montgomery County Bar Association v. Rinalducci,* 329 Pa. 296, 298, 197 A. 924. Indeed, the appellants concede that the "Midlothian lease" was not offered in evidence; and a reading of the record reveals that the only use of the word "Midlothian" in the evidence was to identify a locality or district and not as the source of any legal rights in Shannon or the appellants.

Accordingly, the judgment of the court below as hereinafter modified will be affirmed on the following excerpts from the opinion of Judge ANDERSON:

"On December 3, 1943, Spencer S. Shannon, Katherine W. Shannon and Leon Falk, Jr., Trustee for Spencer S. Shannon, Jr., and Patricia Shannon, [appellants], entered into a written lease (hereinafter referred to as the Shannon Lease) with the Pennsylvania Edison Company, now the Pennsylvania Electric Company, [appellee], granting to the latter the mining rights to coal underlying certain tracts of land in Huntingdon and Bedford Counties. The lessee agreed to pay to the lessors a royalty of fifteen cents (15¢) for every ton of coal mined and removed from or used by the lessee on the leased premises. The lease contained a confession of judgment and also a provision for the arbitration of disputes, substantially as follows:—'The Lessors and Lessee mutually covenant and agree that in case of disagreement or dispute between the Lessors and Lessee as to interpretation or application of any of the covenants, agreements or conditions of this lease, or to performance or non-performance of the same, including disagreements as to the operation of or existence of the conditions provided for in Clause 3 of the Lessee's covenants, such disagreement and disputes shall be settled from time to time by arbitra-

tion as follows: . . . (provides for the choosing of arbitrators) . . . Such awards by all or a majority of said arbitrators shall be final and conclusive on the Lessors and Lessee as to the question or questions of fact submitted to arbitration; their conclusions of law shall be subject to correction by the Court. . . . It is the intention and agreement of the parties by this arbitration clause that they are to be bound by the provisions of the Act of Assembly approved the 25th day of April, 1927, P. L. 381. . . .' It was agreed between the parties in the lease that if the lessors 'acquire by deed, lease or otherwise, within a period of five years from the date of this lease, the coal underlying certain tracts or parts of tracts known to the parties hereto as the Gould, Everett-Saxton Company, Harnish, formerly Broad Top Coal Company, Rock Hill Coal and Iron Company and Shannon tracts or parts of tracts of land, the same, without further contract or designation herein than formal written notice by lessors to the lessee of such acquisition shall be added to and considered as part of the herein leased lands and premises.' On December 30, 1943, the Pennsylvania Edison Company entered into a written lease with William and Theresa Reed, granting to the Pennsylvania Edison Company all the mining rights in the coal underlying two tracts of land. One of them is known as Tract Number 2, or the Gould tract, involved in these proceedings; the Lessee agreeing to pay twenty-five (25¢) cents per net ton of coal taken therefrom. On June 6, 1944, the Immaculate Conception Church of Dudley, Pennsylvania, conveyed a one-half interest in the Gould tract to Spencer S. Shannon, individually. The validity of this conveyance was taken before the Supreme Court, Shannon v. Reed et ux., 355 Pa. 628, and in accordance with the Supreme Court decision the case was retried and the Court of Common

Pleas of Huntingdon County confirmed the one-half interest of Spencer S. Shannon in the tract. A dispute arose thereafter as to whether this tract came under the terms of the original Shannon lease and on July 15, 1949, lessors, (Shannon et al.) caused judgment to be entered, under a warrant of attorney contained in the lease, in the amount of $5,156.74, against the lessees (Pennsylvania Electric Company) in the Court of Common Pleas of Bedford County, alleging failure to comply with the terms of the lease. Thereafter the Electric Company obtained rules to open or strike off the judgment and to show cause why they should not proceed with arbitration to determine all questions in dispute in the manner provided in the lease. From the decision of the Court of Common Pleas of Bedford County on the rules granted an appeal was taken to the Supreme Court of Pennsylvania which held that arbitration was the proper proceeding to dispose of all questions in dispute both of law and fact. See Shannon et al. v. Pennsylvania Electric Company, 364 Pa. 379. Arbitrators were duly appointed, testimony taken and a majority and minority report filed. As a result of the majority report and award made in favor of Shannon et al. [appellants], the aforementioned motions to confirm and correct the award were filed which brings the proceeding before the court.

"The paramount question for determination is whether the one-half interest which Spencer S. Shannon now holds in the Gould tract is subject to the conditions of the original Shannon lease as contended by the Electric Company or whether this interest is held by him solely in his individual capacity with no connection or relationship whatever to the original lease as he contends and as found by the majority report of the arbitrators.

"We are fully cognizant of the force and effect of an award of arbitration under the Act of April 25, 1927, P. L. 381, which as modified is incorporated into the Shannon lease agreement, and recognize that so far as the facts are concerned, an award of arbitrators has the same status as a verdict of a jury. 'The general rule has been stated that unless their powers are limited by the agreement of submission, the arbitrators are the final judges of both the law and the facts and their award will not be reversed or set aside for a mistake of either.' Electric Power Co. v. Allen, Lane and Scott, 367 Pa. 325 (1951) and cases therein cited. However, the agreement in the lease providing for arbitration contains the following condition: 'Such award by all or a majority of said arbitrators shall be final and conclusive on the lessors and lessee as to the question or questions of fact submitted to arbitration; their conclusions of law shall be subject to correction by the court.' And in addition the Act of 1927, supra, Section 2 provides: 'In either of the following cases the court shall make an order modifying or correcting, the award upon the application of any party to the arbitration: (d) Where the award is against the law and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.' See Philadelphia Housing Authority v. Turner Construction Co., 343 Pa. 512. It seems therefore crystal clear under this arbitration agreement that erroneous conclusions of law and an award based thereon by the arbitrators must be corrected by the court. The question of the status of the one-half interest in the Gould tract acquired by Spencer S. Shannon is undoubtedly a question of law. See Shannon v. Pennsylvania Electric Company, supra. The arbitrators properly so regarded it as found in their conclusions of law: '1... . . The acquisition of a one-half

interest in the Gould tract by Spencer S. Shannon, individually, was not the acquisition of the lessors.' This conclusion being premised on a previous finding of fact to the same effect. While it may be that Shannon's acquisition by deed of the one-half interest in the Gould tract was not the actual acquisition of the lessors, yet it was impressed with the same duties and obligations under the Shannon lease as though it had been acquired by all of the lessors. The failure of the arbitrators to so find and the award made accordingly make it necessary to correct the award. It is manifestly apparent that when Shannon alone acquired an interest in the Gould tract, one of the tracts specifically mentioned in the Shannon lease, that his interest came under the conditions of the original Shannon lease. . . . 'No one can acquire rights in property antagonistic to the person whose interest he has committed himself to protect, nor hold any benefit acquired by fraud or breach of duty.' Hamberg v. Barsky, 355 Pa. 462. This is undoubtedly what Mr. Chief Justice MAXEY contemplated when a different phase of this case was before the Supreme Court when he stated: 'The question now to be decided is whether the dispute as to Spencer S. Shannon holding his one-half interest in the Gould land as *trustee* for the lessor in the Shannon lease so as to bring that land within the conditions of the Shannon lease rather than the Reed lease. . . .' (underscoring ours) Shannon v. Pennsylvania Electric Company, supra, p. 383. That Mr. Shannon recognized the validity of this provision of the Shannon lease is indicated by the facts disclosed by the testimony; that the lessors did acquire two of the other tracts mentioned in the lease and did comply with their agreement to include or bring them under the Shannon lease. It is quite significant that in the case of the Harnish tract, Katherine W. Shannon, one

of the lessors in the Shannon lease, was not a grantee in the Harnish deed, yet the provisions of the lease were carried out as to this tract, indicating clearly that Spencer S. Shannon was acting as trustee for her. In fact a perusal of the testimony surrounding all of these transactions shows very clearly that Mr. Shannon was the moving spirit in all the negotiations and that others named and included as parties were acting under his tutelage. . . .

"[Appellants] argue very earnestly that since the Electric Company already had a lease on the coal in the Gould tract when Shannon acquired his interest therein that Shannon never acquired an interest in the coal and consequently by the Electric Company's own act he, Shannon, was prohibited from complying with the terms of the original Shannon lease. This argument is specious [and] fails to take into consideration one of the admitted facts of the case, i.e., that the Reeds did not own and consequently could not give a valid lease on the coal aforesaid since they had only a one-half interest therein. We recognize of course that a lease of coal in place until such time as all the merchantable coal shall have been mined constitutes a sale in fee simple, but we are also cognizant of the fact that one cannot legally lease or sell that which he does not own or possess without proper authority. Smith v. Glen Alden Coal Co., 347 Pa. 290. The very fact that contemporaneously with the acquisition of the title to the one-half interest in the Reed tract by Shannon that Shannon and the Reeds executed a separate agreement, frequently and perhaps not without merit referred to by [appellee] as a secret agreement, providing that Reeds should pay Shannon a substantial amount in damages and thereafter divide the royalties and wheelage between them, is an indication of the intention of the parties and of the lack of good

360

faith on Shannon's part, even though as contended he may have been acting under advice of counsel. It is apparent, too, that any payments made by the Electric Company to Shannon for wheel tolls and royalties were made under misapprehension and mistake and should be refunded."

Judgment affirmed with leave to the defendants to apply to the court below for a reconsideration of any credits to which they may be entitled on account of royalties or wheel-tollage.*

* Reporter's Note: As amended June 5, 1954.