CONSOLIDATION COAL COMPANY and MTB Incorporated, Trading as Conrhein Coal Company, Appellees

v.

Dennis A. WHITE, Ann Louisa White Sullivan, Dennis A. White, Personal Representative of the Estate of Richard O. White, Jr., Deceased, PNC Bank Delaware, Trustee of the Ruth Pierce Smith Revocable Living Trust, Howard T. Pierce, Linda Pierce Frasier, Phillip D. Lung, Barry R. Lung, Roy L. Lung, Appellants.

Superior Court of Pennsylvania.

Argued March 30, 2005.
Filed April 26, 2005.

David C. Hook, Waynesburg, for appellants.

Mary K. Pruss, Waynesburg, for appellee.

Before: HUDOCK, POPOVICH and JOHNSON, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is an appeal from an order granting declaratory relief on the pleadings. We affirm.

¶ 2 On May 1, 2003, Consolidation Coal Company (Consol) and MTB Incorporated (MTB), trading as Conrhein Coal Company (Conrhein) [1] initiated an action to quiet title by filing a complaint against Dennis A. White, Ann Louisa White Sullivan, Dennis A. White (as personal representative of the Estate of Richard O. White, Jr., Deceased), PNC Bank Delaware (as Trustee of the Ruth Pierce Smith Revocable Living Trust), Howard T. Pierce, Linda Pierce Frasier, Phillip D. Lung, Barry R. Lung, and Roy L. Lung (collectively the Hagerman heirs). The subject real property is situate in Greene County, Pennsylvania. In 1904, the fee simple title to certain of the ownership rights in the property was conveyed by deed (the Crow deed) from Margaret Crow and Edward H. Crow, *et coniunx*, to Benson L. Hagerman. The Crow deed was executed on May 21, 1904, and was recorded in Greene County on May 30, 1904.

¶ 3 The Crow deed reserved to the Crows all rights to the coal in that portion of the "Pittsburg" seam underlying the property.[2] The mineral estate retained by

---

1. The trial court refers to the plaintiffs in this action collectively as "Consol." For clarity and consistency, we adopt the trial court's terminology.

2. In 1890, the United States Board on Geographic Names decided that the "h" would be dropped from all place names ending in "-burgh." The citizens of Pittsburgh, Penn-

the Crows has been designated as the "Quiet Title Tract" by the trial court. The Crow deed conveyed the surface rights to Benson L. Hagerman along with mineral rights other than those pertaining to the Quiet Title Tract (including oil and gas rights, drilling rights through the "Pittsburg" seam, and coal rights to tracts other than the Quiet Title Tract itself).

¶ 4 The Crow deed included the following terms:

> The parties of the first part [Crows] reserves [sic] and retains [sic] for their own use and behoof all of that vein of coal that underlies the above tract of land known as the Pittsburg or River Vein. No part of which is included in this purchase of the above described tract of land, also the right to mine and remove the coal from under said land and the right to take on to said land such machinery and material as is required to operate [a] mine or mines that may be located on said land, and the right to remove same when deemed necessary— [For] All surface land used or taken for mining purposes to which purchaser hereby agrees, those who have the right to mine said Pittsburg Vein of coal shall pay to said purchaser at the rate of two hundred ($200) per acre for same the Purchaser is hereby granted by the parties of the first part, the privelage [sic] and right to drill at anytime, through the Pittsburg vein of coal above reserved, for oil or gas—The said gas and oil is conveyed with the surface and all other veins of coal to purchaser by this indenture—132 A 69A.

> Together with all and singular [sic] the said property improvements, ways, waters, water courses, rights, liberties,

privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof, and all the estates, rights, title, interest, property, claim and demand whatsoever of the said parties of the first part, in law, equity or otherwise howsoever, of, in and to the same and every part thereof, the said one hundred and thirty two Acres of land.

Crow Deed, recorded 5/30/1904, at 2.

¶ 5 In 1906, Benson L. Hagerman, *sub nom.* B.L. Hagerman, executed a deed (the Hagerman deed) conveying his interest in the property to G.W. Barney, subject to one reservation which is discussed below. The Hagerman deed was executed April 5, 1906, and was recorded in Greene County on December 29, 1906. The Hagerman deed contains language which purports to reserve underground transportation rights in and through the Quiet Title Tract (the Hagerman reservation). The Hagerman deed explicitly acknowledges that the conveyance is made subject to the reservation of coal rights recited in the Crow deed and reiterates the recitation itself. The Hagerman deed then states:

> The party of the first part [B.L. Hagerman] further reserves and excepts the exclusive right, appendant and running with the land, for himself, [his] heirs and assigns, to make and maintain tracks, roads and ways in and through the mines, which may be located in said land, or which may be hereafter located on said land in the Pittsburg vein of coal, forever, for the transportation and drainage of said coal, and of coal and supplies to and from other lands, and the party of the second part [G.W. Bar-

---

sylvania, and its environs refused to comply. In 1911, the United States Board on Geographic Names reversed its decision and restored the "h" to Pittsburgh, Pennsylvania.

Both the Crow deed and the deed subsequently executed by Benson L. Hagerman employ the then current official spelling to designate the coal seam as the "Pittsburg Vein."

ney] hereby covenants and agrees that the said party of the first part, his heirs and assigns shall have the exclusive right as aforesaid.

All gas and oil is hereby conveyed, and all other veins of coal, to purchaser [G.W. Barney] by this indenture.

Hagerman Deed, recorded 12/29/1906, at 2–3. Title to the Hagerman reservation devolved on the parties designated as "the Hagerman heirs" through various transactions recited in the Second Amended Complaint.

¶ 6 At the time the original complaint was filed, Consol was in control of the Quiet Title Tract through a series of leases and other conveyances which are of record in Greene County. A controversy arose when the Hagerman heirs asserted a right to control the purported Hagerman reservation and to preclude Consol from removing all the coal in the Quiet Title Tract in a manner that would collapse the interior space of the mine. As the trial court explained matters, the Hagerman heirs essentially claim that removal of all the coal from the Pittsburgh vein in the Quiet Title Tract creates a "void" which should revert to them and be available for "haulageways." Trial Court Opinion, 6/24/04, at 6. In its complaint, Consol requested the trial court to grant declaratory relief as follows: to declare that (a) Consol's title to the Quiet Title Tract is a one hundred percent interest valid and indefeasible against all other rights and claims; (b) the Hagerman heirs, their heirs and assigns, and all other persons or entities are barred from calling into question the validity of Consol's title to the Quiet Title Tract; (c) the Hagerman heirs, their heirs and assigns, and other persons or entities are forever barred from asserting any right or interest in the Quiet Title Tract inconsistent with the interest of Consol; (d) the Hagerman reservation is of no force or effect whatsoever; (e) Con-

sol is entitled to a decree declaring that it has full and complete control over the Quiet Title Tract and that the Hagerman heirs have no right or interest of any kind in it; and (f) Consol is entitled to a decree declaring that it has the exclusive right to utilize the Quiet Title Tract for any and all purposes associated with its mining operations free and clear of any servitude, obligation or claim by the Hagerman heirs or any other persons or entities whatsoever. Second Amended Complaint, 12/17/03, at 6–7.

¶ 7 The matter proceeded before the trial court with certain preliminary objections being sustained and others rejected. Consol filed both an amended complaint and a second amended complaint. Default judgment was entered against PNC Bank Delaware (in its capacity as trustee for a living trust pertaining to one of the Hagerman heirs) in July of 2003. Ultimately, Consol moved for entry of judgment on the pleadings pursuant to the Declaratory Judgments Act. The Hagerman heirs opposed the motion. Via an order dated June 23, 2004, but filed the following day, the trial court granted partial judgment on the pleadings in favor of Consol as follows:

1. The Hagerman reservation found in Deed Book Volume 180, Page 46 is of no force or effect.

2. Anyone claiming under the Hagerman reservation is forever barred from asserting any claim or right to any portion of the 132 acre 69 perch tract of the Pittsburgh coal in Richhill Township, known as the Quiet Title Tract.

3. Defendants [the Hagerman heirs] have no right, title and interest in or to the Quiet Title tract.

4. The court grants partial judgment on the pleadings for Consolidation Coal Company and MTB, Inc., trading as Conrhein Coal Company and against Dennis A. White, et al., Defendants [the

Hagerman heirs] as described in the attached Opinion.

Order, 6/24/04. The Hagerman heirs (hereafter Appellants) filed a timely notice of appeal on July 9, 2004. The trial court did not require Appellants to file a Rule 1925(b) statement.

¶ 8 Appellants present one issue: what rights did B.L. Hagerman reserve for himself, and for his heirs and assigns via the Hagerman reservation? Contrary to Appellants' assertion, the question before the trial court was not whether any other person or entity exists with rights superior to those asserted by Consol. The only question is whether Appellants themselves possess a right which entitles them to burden the exploitation of the coal rights in the Quiet Title Tract. Thus, we agree with the trial court that it was not required to inquire whether Consol has recited a chain of title sufficient to defeat a claim to the Quiet Title Tract that might be asserted by some person or entity other than Appellants. The trial court was required only to adjudicate the controversy actually placed before it, namely, what rights (if any) do Appellants possess?

¶ 9 Before addressing the merits of Appellants' claim, we must first resolve several preliminary matters. First, we must ascertain whether this appeal is properly before us as stemming from a final order. Consol captioned the complaint underlying this appeal as an action to quiet title. However, during the pendency of the proceedings before the trial court, Consol filed a motion for judgment on the pleadings pursuant to the Declaratory Judgments Act (the Act).[3] It is clear that the trial court's subsequent order was entered in accordance with section 7532 of the Act which provides that all such declarations of rights shall have the force and effect of a final judgment or decree. 42 Pa.C.S.A. § 7532. When an order entered under the Act affirmatively or negatively declares the "rights, status, and other legal relations" amongst the parties, it is a final order which is immediately appealable. *Nationwide Mutual Insurance Company v. Wickett*, 563 Pa. 595, 601–02, 763 A.2d 813, 817 (2000). If the trial court's order does, in fact, adjudicate the rights of all parties, then it is immediately appealable pursuant to Rule of Appellate Procedure 341(b)(2). *Id.* at 602, 763 A.2d at 817. If no such declaration is made, then the order is merely interlocutory and the trial court retains jurisdiction over the matter despite the filing of a notice of appeal. *Id.*

¶ 10 In the present case, the trial court's order indicates that it is a "partial" grant of judgment on the pleadings. However, upon inspection, it is clear that the trial court's intention was to indicate that it granted judgment in favor of Consol on certain aspects of the relief sought but rejected certain of Consol's requests. The trial court declined to rule that Consol has the exclusive right to utilize the Quiet Title Tract for "any and all purposes" associated with Consol's mining operations without limitation against any claim by Appellants "or any other persons or entities whatsoever." Trial Court Opinion, 6/24/04, at 3, 7.

¶ 11 Specifically, the trial court noted that Consol has no more rights than those possessed and conveyed by its predecessors in title. *Id.* at 7.

[W]e cannot expand upon the rights purchased by Consol's predecessor. It purchased the Pittsburgh coal, the right to remove it, and the right to import and remove any required materials and machinery. It did not purchase a waiver of surface support, and it did not purchase haulage, ventilation and drainage rights,

---

**3.** 42 Pa.C.S.A. §§ 7531–7541.

at least it so appears based on the pleadings in this case. Merely based on these pleadings, we cannot say that [Consol] acquired sufficient rights to enable it "to mine and remove all of said coal and the right to transport, convey and otherwise move and handle coal, materials, personnel, air, utilities, supplies, effluent, etc. in and through the Quiet Title Tract[.]" *Id.* at 7–8. Nevertheless, the trial court's order is quite clear that it has fully adjudicated the claims as between and among the named parties to this litigation by ruling that there is no conceivable legal theory under which Appellants could prevail in their claim against Consol. Whatever rights may remain to be adjudicated between or among persons or entities not party to the instant litigation, the rights of the parties who actually were before the trial court have been defined in a final manner. We therefore conclude that the trial court's order was final and immediately appealable.

 ¶ 12 As a second preliminary matter, we note that the appeal stems from a declaratory judgment. Declaratory relief is not obtainable as a matter of right. *Osram Sylvania Products, Inc. v. Comsup Commodities, Inc.*, 845 A.2d 846, 848 (Pa.Super.2004). "Whether a trial court should exercise jurisdiction over a declaratory judgment action is a matter of sound judicial discretion." *Id.*

> When reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow. Consequently, we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion. The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. Where the trial court's factual determinations are adequately supported by the evidence we may not substitute our judgment for that of the trial court.

*Pressley v. The Travelers Property Casualty Corporation*, 817 A.2d 1131, 1137 (Pa.Super.2003) (citations omitted). In the present case, however, the trial court did not conduct a trial before defining the parties' rights. Rather, declaratory relief was entered pursuant to a motion for judgment on the pleadings. Therefore, our scope and standard of review are modified by this procedural point.

 ¶ 13 Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912, 918 (2005). Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. *Citicorp North America, Inc. v. Thornton*, 707 A.2d 536, 538 (Pa.Super.1998). It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. *Id.* In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. *Id.* On appeal, we accept as true all well-pleaded allegations in the complaint. *Meehan, supra.*

 ¶ 14 On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury. *Citicorp, supra.*

Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Kelly v. Nationwide Insurance Company*, 414 Pa.Super. 6, 606 A.2d 470, 471–72 (1992) (quotations and citations omitted).

¶ 15 Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. *Hetrick v. Apollo Gas Company*, 415 Pa.Super. 189, 608 A.2d 1074, 1077 (1992). Because these estates are severable, different owners may hold title to separate and distinct estates in the same land. *Id.* "Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate." *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 304, 32 A.2d 227, 235 (1943) (citing *Graff Furnace Co. v. Scranton Coal Co.*, 244 Pa. 592, 91 A. 508 (1914)). In Pennsylvania, this servitude of subjacent support is, as noted above, a severable estate in land and is sometimes referred to in this Commonwealth as the "third" estate. *Id. See Jones v. Wagner*, 66 Pa. 429, 434 (1870) (adopting the English Common Law rule concerning subjacent support and recognizing this right as a "third estate" in land in Pennsylvania).

¶ 16 The crux of Appellants' claim is their assertion that the right of subjacent support passed to B.L. Hagerman under the Crow deed of 1904 and that he reserved this right when executing the Hagerman deed in 1906 and conveying title to G.W. Barney. Appellants' Brief at 28.

G.W. Barney and his successors were subject to the duty and obligation to provide support so that Hagerman, his successors and assigns could successfully make and maintain tracks, roads and ways in and through the mines.

*Id.* Appellants also assert that Consol has failed to demonstrate that it has the right to subside the surface and that it can evade Appellants' right, under the Hagerman reservation, "to maintain tracks, roads and ways in and through the mines which carries with it the obligation to provide support above said tracks, roads and ways in and through the mines." *Id.*

¶ 17 When construing a deed, a court's primary object must be to ascertain and effectuate what the parties themselves intended. *Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa.Super.2002). The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. *Id.* We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. *Id.* Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. *Id.* If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. *Id.* (In this case, that party would appear to be B.L. Hagerman as grantor under the Hagerman deed.) To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object

or purpose of the parties and the conditions existing when it was executed. *Id.*

¶ 18 Appellants' various arguments in support of their position ignore one crucial point: the explicit language of the Hagerman reservation itself does not, in fact, reserve the right of subjacent support to Hagerman and his heirs and assigns. Rather, it reserves only the right "to make and maintain tracks roads and ways in and through the mines, which may be located in said land, or which may be hereafter located on said land in the Pittsburg vein of coal, forever, for the transportation and drainage of said coal, and of coal and supplies to and from other lands[.]" Hagerman Deed, recorded 12/29/1906, at 2–3 (emphasis added). The Hagerman deed conveyed all surface rights as well as all gas and oil rights, and all rights in coal veins other than the Pittsburgh seam, to G.W. Barney. *Id.*

¶ 19 It is well established under Pennsylvania law that it is the owner of the surface land who has the proprietary right to support of the surface. *Commonwealth v. Fitzmartin*, 376 Pa. 390, 395, 102 A.2d 893, 895 (1954). It is equally well settled that this right may be waived either expressly or by implication. *Id.* at 394, 102 A.2d at 895. "Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate." *Id.* Although the owner of the surface estate may, by contract or by waiver, relinquish the right of subjacent support, any "such relinquishment should not be implied in the absence of language clearly indicating the intention of the parties to that effect." *Id.* at 398, 102 A.2d at 896. Nothing in the purported Hagerman reservation clearly and unequivocally indicates that Hagerman intended to sever the right of superincumbent support from the surface

estate, thereby creating a third estate in the land and retaining that estate for his own after conveying the surface estate to G.W. Barney. Whoever may own the right of subjacent support to the surface lands superincumbent to the Quiet Title Tract, Appellants have not demonstrated that they own this right under the terms of the Hagerman reservation. The trial court properly declined to rule on the rights of persons or entities not party to the instant litigation.

¶ 20 With regard to the subject of the purported Hagerman reservation itself, we cannot agree with Appellants that Hagerman ever had any rights in the subterranean cavity created by extracting coal from the Quiet Title Tract utilizing the room and pillar method of mining. It is the owner of the coal who owns the chamber or space enclosing that coal. *Westerman v. Pennsylvania Salt Manufacturing Company*, 260 Pa. 140, 144, 103 A. 539, 541 (1918). Hagerman never owned the coal of the Pittsburgh seam and, therefore, never owned the chamber or space enclosing it or the haulageways created by the mining of it. *See Pennsylvania Electric Co. v. Shannon*, 377 Pa. 352, 359, 105 A.2d 55, 59 (1954) (holding that one cannot assert a legal claim to possess that which he does not own).

¶ 21 We have carefully considered the claims of both parties as set forth in their respective briefs. Moreover, we have scrutinized the record certified on appeal in conjunction with our consideration of the parties' claims. We agree with the trial court that Hagerman had no rights whatsoever to the Pittsburgh seam of coal constituting the Quiet Title Tract and therefore could not reserve to himself any such rights. Moreover, we agree with the trial court's resolution of the parties' claims and with its decision to grant the limited relief as specified in the order of

June 24, 2004. Therefore, we affirm on the basis of the trial court opinion. *See also Kormuth v. United States Steel Company*, 379 Pa. 365, 369–371, 108 A.2d 907, 909–10 (1954) (holding that coal in place is a pure corporeal hereditament and there is no more propriety in claiming a title in the grantor to the space occupied by the coal than there would be in claiming a similar right in a vendor of the surface to the space developed by the vendee in digging the cellar and foundations of a house; and that the chamber or way made by the coal owner through its own property, to wit, the coal, and the space left by the removal of the coal, belongs exclusively to the coal owner and not to the vendor of the coal rights); *Smith*, 347 Pa. at 302–03, 32 A.2d at 234 (citing Blackstone, Vol. 2, section 176 and holding that an estate in reversion is not a present right but is only a future estate comprising the residue left to the grantor which may commence only after the occurrence or non-occurrence of some eventuality); *Webber v. Vogel*, 189 Pa. 156, 160, 42 A. 4, 5 (1899) (holding that while the purchaser of coal rights is in good faith mining out his coal, his right to the use of the space made vacant by his workings cannot be obstructed by the owner of the surface); *Lillibridge v. Lackawanna Coal Co.*, 143 Pa. 293, 307, 22 A. 1035, 1039 (1891) (holding that a grant of all the coal underneath a tract of land is an absolute conveyance in fee simple of all the coal and no greater title than that could be acquired by an exception to the same effect in a grant of the surface; where the coal has not been exhausted or the estate abandoned, the space left by the removal of the coal belongs to the owner of the coal). *Compare Porter v. Consolidated Coal Co.*, 1989 WL 101553 (W.D. Pa. May 4, 1989) (not reported in F.Supp.) (explicating effects of longwall mining on the surface estate, construing multiple deeds and concluding that Pennsylvania law does not preclude longwall mining merely because the parties to deeds conveying coal rights when room and pillar coal mining was the norm could never have foreseen the development of the longwall technique).

¶ 22 We are not unsympathetic to Appellants' concerns regarding the impact of longwall mining on the environment or on the rights of those who own the surface estate of affected property. *See People United to Save Homes v. Department of Environmental Protection*, 789 A.2d 319 (Pa.Cmwlth.2001) (explaining the techniques, history and problems caused by longwall mining). However, this does not alter the fact that the Hagerman reservation is not a proper vehicle to forestall longwall mining of the Quiet Title Tract and Appellants are not the proper persons to assert any rights that may pertain to the owners of the superincumbent estate. The trial court's determination was appropriate in this case.

¶ 23 Order affirmed.