J-S68042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IMMACULATA UNIVERSITY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| HESS CORPORATION, | : | |
| | : | |
| Appellee | : | No. 1021 EDA 2014 |

Appeal from the Order entered on March 6, 2014
in the Court of Common Pleas of Delaware County,
Civil Division, No. 12-2346

BEFORE: ALLEN, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED DECEMBER 09, 2014**

Immaculata University ("the University") appeals from the Order granting Hess Corporation's ("Hess") Motion for Judgment on the Pleadings and dismissing with prejudice the University's Complaint, which averred Hess's vicarious liability under the Pennsylvania Public Utility Code ("the Code") for the fraudulent conduct of Celeren Corporation ("Celeren").[1]  We affirm.

In 2008, the University entered into an Energy Advantage Program Agreement ("Agreement") with Celeren, under which Celeren agreed that it would "be and otherwise act as … the sole energy procurement consultant,

_____

[1] Celeren is an intermediary that was not made a party to this lawsuit. According to the University's Complaint, Celeren filed for bankruptcy protection.  Complaint at ¶ 27.  Thus, the University, one of 210 creditors of Celeren, has no recourse to recover from Celeren.  *Id.* at 27-31.  The bankruptcy action is currently pending in the United States Bankruptcy Court for the District of Delaware.  *Id.* at 27 n.1.

agent, aggregator, broker, supplier and/or energy marketer, as such terms are defined by applicable federal and state laws…" on behalf of the University, in exchange for a fixed monthly payment. Agreement at Article 2.1. Celeren indicated to the University that it had executed an agreement with Hess, under which Hess would supply natural gas to the University in return for Celeren's transfer of the University's monthly bill payments to Hess.

The University submitted monthly payments totaling $146,116.63 to Celeren between February and April 2008, but Celeren did not forward those payments to Hess. Celeren failed to notify the University that it did not transfer the payments to Hess. During the period of delinquency, Celeren entered into forbearance and/or payment agreements with Hess and other utility service providers, but did not tell the University about those agreements. Eventually, Hess requested payment from the University for the natural gas it supplied during those months, which the University paid.

In March 2013, the University filed a Complaint against Hess, alleging that Hess is liable to the University for Celeren's fraudulent acts pursuant to the licensed natural gas supplier ("NGS") regulations under the Code. The University also alleged that Hess failed to notify it of Celeren's failure to pay, resulting in the University's continued payments to Celeren. Hess filed an Answer to the Complaint with New Matter. The University filed a Reply to Hess's New Matter.

Subsequently, Hess filed a Motion for Judgment on the Pleadings, averring that it could not be liable for Celeren's fraudulence under the Code, and that the action was barred by the applicable statute of limitations. The trial court granted Hess's Motion for Judgment on the Pleadings and dismissed the University's Complaint with prejudice. The University filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, the University raises the following questions for our review:

I. Whether the trial court abused its discretion and committed an error of law by granting [Hess's] Motion for [Judgment on the Pleadings] where genuine issues of fact exist[?]

II. Whether the trial court abused its discretion and committed an error of law by finding no disputed issues of fact because the pleadings indicate that there is a disputed issue of fact, *i.e.*, whether Celeren is a nontraditional marketer or marketing services consultant as defined in 52 Pa. Code §§ 62.102 and 62.114[?]

III. Whether the trial court abused its discretion and committed an error of law by failing to grant [the University] leave to amend its Complaint[?]

Brief for Appellant at 4.

Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant

documents. On appeal, we accept as true all well-pleaded allegations in the complaint.

***Consolidation Coal Co. v. White***, 875 A.2d 318, 325 (Pa. Super. 2005) (internal quotation marks and citations omitted).

Because the University's first two claims are related, we will address them together. The University argues that the trial court committed an error of law by granting Hess's Motion for Judgment on the Pleadings because there was a genuine issue of material fact. Brief for Appellant at 12. Specifically, the University contends that there is a genuine issue of material fact regarding whether Celeren could be classified as a "nontraditional marketer" or a "marketing services consultant" under the Code, and therefore would be liable to the University. ***Id.*** at 13. The University also notes that this is a case of first impression, and the only available interpretation of the relevant sections of the Code arises from an administrative decision of the Public Utilities Commission ("Commission"). ***Id.*** at 14-15.

At the time the Complaint was filed, the Code defined the terms "marketing services consultant" and "nontraditional marketer," as follows:

### § 62.101. Definitions

\* \* \*

*Marketing services consultant*—A commercial entity, such as a telemarketing firm or auction-type website, or energy consultant, that under contract to a licensee or a retail customer, may act as an agent to market natural gas supply services to retail gas customers for the licensee or may act as an agent to

recommend the acceptance of offers to provide service to retail customers. A marketing services consultant:

> (i) Does not collect natural gas supply costs directly from retail customers.
> (ii) Is not responsible for the scheduling of natural gas supplies.
> (iii) Is not responsible for the payment of the costs of the natural gas to suppliers, producers, or [natural gas distribution companies].

* * *

*Nontraditional marketer*—A community-based organization, civic, fraternal or business association, or common interest group that works with a licensed supplier as an agent to market natural gas supply services to its members or constituents. A nontraditional marketer:

> (i) Conducts its transactions through a licensed NGS.
> (ii) Does not collect revenues directly from retail customers.
> (iii) Does not require its members or constituents to obtain its natural gas service through the nontraditional marketer or a specific licensed NGS.
> (iv) Is not responsible for the scheduling of natural gas supplies.
> (v) Is not responsible for the payment of the costs of the natural gas to its suppliers or producers.

52 Pa. Code § 62.101 (2013).

Additionally, section 62.102 of the Code provides for an NGS's liability for the fraudulence of certain other actors as follows:

**§ 62.102. Scope of licensure**

* * *

**(d)** A nontraditional marketer is not required to obtain a license. The licensed NGS shall be responsible for violations of 66 Pa.C.S.[A.] (relating to the Public Utility Code), and applicable regulations of this title, orders and directives committed by the

- 5 -

nontraditional marketer and fraudulent, deceptive or other unlawful marketing or billing acts committed by the nontraditional marketer.

**(e)** A marketing services consultant is not required to obtain a license. The licensed NGS shall be responsible for violations of 66 Pa.C.S.[A.] and applicable regulations of this title, orders and directives committed by marketing services consultant and fraudulent, deceptive or other unlawful marketing or billing acts committed by the marketing services consultant.

52 Pa. Code § 62.102(d), (e) (2013).[2]

Here, the parties do not dispute that Hess is a licensed NGS. However, upon review of the relevant statutory provisions, we conclude that, Celeren cannot be classified as a nontraditional marketer or a marketing services consultant under the Code. The University's Complaint itself indicates that, under the Agreement, Celeren was to remit the University's payments to Hess. **See** Trial Court Opinion, 7/9/14, at 9; **see also** 52 Pa. Code § 62.101 (2013). Additionally, Celeren did not conduct its transactions through Hess. **See** Trial Court Opinion, 7/9/14, at 10; **see also** 52 Pa. Code § 62.101 (2013). Thus, there is no issue of fact regarding Celeren's classification under the

---

[2] We note that sections 62.101 and 62.102 were amended in July 2014. However, the new statutory language does not change our analysis in this case.

Code.[3]

We additionally note that the trial court considered the case of *Rama Constr., Inc. t/a Ramada Inn Int'l Airport v. Hess Corp.*, Docket No. C-2008-2058200, which took place in 2008 before Administrative Law Judge David A. Salapa for the Commission. *See* Trial Court Opinion, 7/7/14, at 6-7. The *Rama* case had similar facts to this case, as both Celeren and Hess were parties to that action. *See Rama Constr.* at 1-3. Judge Salapa concluded that Celeren was not a nontraditional marketer or a marketing services consultant under section 62.101 because Rama's Complaint alleged that Celeren collected money from Rama. *Id.* at 11. Thus, Judge Salapa concluded, Hess, as a licensed NGS, was not responsible for Celeren's fraudulent conduct under section 62.102(d), (e). *Id.* We, like the trial court, find that the Commission's interpretation of the Code is persuasive in this case. Based on the foregoing, we conclude that the trial court properly granted Hess's Motion for Judgment on the Pleadings.

In its third claim, the University argues that the trial court erred by refusing to grant the University leave to amend its Complaint. Brief for

---

[3] The University also indicates that section 62.114(e) may implicate Hess's liability. *See* 52 Pa. Code § 62.114(e) (2013) (stating "a licensee is responsible for any fraudulent, deceptive or other unlawful marketing or billing acts performed by the licensees, its employees, agents or representatives. A licensee shall inform consumers of State consumer protection laws that govern the cancellation or rescission of natural gas supply contracts."). The University has not demonstrated through any pertinent analysis that Hess is liable for Celeren's actions under section 62.114(e). *See* Pa.R.A.P. 2119(a).

Appellant at 15. The University claims that its amended Complaint would not result in surprise or prejudice to Hess. *Id.*

> Rule 1033 of the Pennsylvania Rules of Civil Procedure allows a party to amend his or her pleadings with either the consent of the adverse party or leave of the court. Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party.

*Werner v. Zazyczny*, 681 A.2d 1331, 1338 (Pa. 1996) (internal citation marks and quotations omitted). "There may, of course, be cases where it is clear that amendment is impossible and where to extend leave to amend would be futile. However, the right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully." *Hill v. Ofalt*, 85 A.3d 540, 557 (Pa. Super. 2014).

Here, the University has not specified how it wishes to amend its Complaint. The University has not indicated that it wishes to provide a factual amendment or add a new theory of liability. *See, e.g.*, Brief for Appellee at 21 (stating that "the University still has not set forth how it would amend or refine its Complaint to change the facts concerning Celeren so that either a law student or a Senior Judge would conclude Celeren was a nontraditional marketer or a marketing services representative."). Thus, the trial court did not abuse its discretion in denying leave to amend the Complaint where the University did not show that there is a possibility that the amendment can be accomplished successfully.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2014